## GLADDEN v. SOUTHERN RAILWAY COMPANY

### (141 S. E., 90)

1. RELEASE—WHETHER INJURED PASSENGER WAS INDUCED TO SIGN RE-
LEASE BY MISREPRESENTATION, FRAUD, OR COERCION, NOT KNOWING
OR UNDERSTANDING WHAT SHE WAS DOING, HELD UNDER EVIDENCE
FOR JURY.—Whether passenger injured while alighting from train
acted freely and voluntarily in executing release in favor of de-
fendant carrier, or whether not knowing or understanding what
she was doing she was induced to sign it by defendant's misrepre-
sentation, fraud, or coercion, *held*, under evidence, for jury.

2. CARRIERS—CARRIER OWES PASSENGER ON ITS TRAIN HIGHEST DE-
GREE OF CARE.—Railroad as a common carrier of passengers, owes
to passenger on its train the highest degree of care.

3. CARRIERS—WHETHER CARRIER WAS NEGLIGENT TOWARD PASSENGER
INJURED WHILE ALIGHTING FROM TRAIN WHICH SUDDENLY STARTED
HELD FOR JURY.—In action for injuries to aged and feeble passen-
ger, sustained when train suddenly started while she was alighting
from train, whether carrier was guilty of negligence in the exer-
cise of its duty to passenger *held* question for jury.

4. TRIAL—ERROR IN CHARGING THAT ONE SETTING UP CONTRIBUTORY
NEGLIGENCE DEFENSE ADMITS HIS OWN NEGLIGENCE HELD REN-
DERED HARMLESS BY SUBSEQUENT CORRECTION THEREOF.—Error in
charging that one setting up defense of contributory negligence
admits negligence on his part was rendered harmless by Court's
correction of the error and the giving of proper instructions when
his attention was called thereto by plaintiff's attorney.

5. TRIAL—INSTRUCTION HELD ERRONEOUS AS SUBMITTING COMPARATIVE
NEGLIGENCE, THOUGH COURT GAVE CORRECT DEFINITION OF CON-
TRIBUTORY NEGLIGENCE.—In passenger's action against carrier for
injuries, instruction that if jury found that carrier was negligent
they should then inquire as to plaintiff's negligence, and if she was
negligent determine whether her negligence was greater or more
efficient cause of the injury than carrier's negligence, and, if so,
plaintiff could not recover because she would be guilty of contrib-
utory negligence, *held* notwithstanding previous correct definition
of contributory negligence, erroneous as leading jury to believe

---

NOTE: Fraud in obtaining release of claim for personal injuries as
question for the jury, see 23 R. C. L., 418.

As to presumption of negligence of carrier from sudden starting of
car while passenger is alighting, see annotation in 13 L. R. A. (N. S.),
611; 29 L. R. A. (N. S.), 814; L. R. A., 1916-C, 373; 5 R. C. L., 80;
1 R. C. L. Supp., 1317.

that, though plaintiff might be guilty of some negligence concurring with carrier's negligence as proximate cause of injury, it would not amount to contributory negligence unless it was a more effcient cause of the injury than carrier's negligence.

6. NEGLIGENCE—"CONTRIBUTORY NEGLIGENCE" IS WANT OF ORDINARY CARE CONCURRING WITH NEGLIGENCE AS PROXIMATE CAUSE OF INJURY.—"Contributory negligence" is a want of ordinary care on the part of the person injured by actionable negligence of another combining and concurring with that negligence and contributing to the injury as the proximate cause thereof, without which the injury would not have occurred.

7. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE TO ANY EXTENT DEFEATS RECOVERY.—In this State contributory negligence to any extent will always defeat a recovery.

8. NEGLIGENCE—DOCTRINE OF COMPARATIVE NEGLIGENCE DOES NOT PREVAIL IN SOUTH CAROLINA.—The doctrine of comparative negligence does not prevail in South Carolina.

Before S. McG. SIMPKINS, SPECIAL JUDGE, Chester, November, 1925.   Reversed and remanded.

Action by Nancy Gladden against the Southern Railway Company.   Judgment for plaintiff, and defendant appeals.

The complaint, answer, reply, charge, and exception referred to in the opinion are as follows:

COMPLAINT

The plaintiff alleges:

(1) That she is a citizen of Chester County, said State, and defendant is a corporation of vast resources and possessed of great wealth, engaged in the business of hauling passengers and freight for hire, and has tracks and roadbeds in Chester and York Counties of this State, and maintains stations in Rock Hill and Ft. Mill, York County, S. C., and has agents and servants at both stations.

(2) That on the morning of the 9th of August, 1924, the plaintiff became a passenger on the north-bound train of defendant from Rock Hill to Ft. Mill, for which privilege she paid her fare by purchasing a ticket before boarding the train at Rock Hill. That the said fare or ticket was taken up by defendant's conductor or other agent, and said con-

ductor or agent, and other agents and servants of defendant, did see or could and should have seen and noticed that plaintiff was an old woman, very stout, feeble, and on account of her age and physical condition was unable to walk steady, to be active, or to walk fast.

(3) That at Ft. Mill plaintiff left her seat to alight from the train on which she was a passenger, and, as she attempted to go down the steps of the coach behind other passengers in front of her, the train started suddenly and without warning and threw her down, and by and on account of said fall the hip bone of her left leg was broken about two inches below the point of contact of the hip bone with the body. That the conductor or flagman, or other agents of defendant, were standing on the platform of the coach from which plaintiff was descending, and did see, or could and should have seen, the plaintiff attempting to get off in her feeble manner, and should have aided her, or should have prevented the train from starting suddenly and without warning to the plaintiff.

(4) That the plaintiff was placed in a hospital for two months and did suffer great pain and agony at the time of the fall and since that time and suffers at the present time, and has been unable to walk a single step, and is now, and has been since the 9th day of August, 1924, confined to her bed, and is continually in aching and excruciating pain and agony, and she is seriously and permanently injured and will never be able to walk again and must spend her remaining days on earth a helpless invalid, never to be free from pain, and as the direct and proximate cause of the gross negligence and carelessness of the defendant, its agents and servants, as hereinabove set forth, she has sustained damages in the sum of $2,999.

(5) That the defendant was negligent in the following particulars, to wit:  (a) In failing to furnish plaintiff, an old, feeble woman, assistance in alighting from its train. (b) In failing to furnish plaintiff, an old, feeble woman,

adequate and safe means of descending from its train. (c) In failing to stop its train a sufficient period of time for the plaintiff to safely get off. (d) In starting its train while plaintiff was in the act of alighting therefrom. (e) In starting its train suddenly and without warning to plaintiff while she, an old woman, was in the act of descending therefrom.

Wherefore the plaintiff demands judgment against the defendant in the sum of $2,999, and for the costs of this action.

### ANSWER OF DEFENDANT

The defendant above named, answering the complaint herein, by way of amendment to its former answer filed herein, alleges:

For a first defense: (1) It denies the truth of each and every allegation contained in said complaint, except as may be hereinafter specifically admitted.

For a second defense: (1) The defendant admits that on or about the date alleged in the complaint, the plaintiff received certain personal injuries while alighting, or just after she had alighted, from defendant's train. (2) That defendant's train had stopped at the station of Ft. Mill on said date for a reasonable time, to allow passengers to disembark; but the plaintiff, without exercising due care in that regard, failed to alight from defendant's train within a reasonable time, and the aforesaid negligence of the plaintiff was the sole cause of her said injuries, or, combining and concurring with the alleged negligence of the defendant, contributing to her said injuries as a proximate cause.

For a third defense: (1) That on or about the date alleged in the complaint, plaintiff received certain injuries while she was alighting, or just after she had alighted, from defendant's train at the station at Ft. Mill, S. C. (2) That thereafter, in consideration of the sum of $150 paid to the plaintiff by the defendant, the plaintiff executed and delivered to the defendant, under her hand and seal, a release in writing, and thereby released and forever discharged the

defendant from all claims and demands, actions, or rights of action, or from the payment of any further sums of money or render of other satisfaction on account of said injuries. (3) That the defendant now pleads the plaintiff's said release as a full and complete bar to her alleged cause of action.

Wherefore, the defendant asks that the complaint herein be dismissed with costs.

### REPLY TO DEFENDANT'S ANSWER

The reply of the plaintiff to the third defense set forth in the answer of the defendant would respectfully show to the Court:

(1) That she denies that she executed the release mentioned in the answer and that she received the $150 referred to in said answer.

(2) That she received no knowledge of the contention of defendant that she had executed a release until so advised by her attorneys after the answer had been served.

(3) That she has been advised by her son that after the 15th of January, 1925, a passbook of the People's National Bank of Rock Hill was received in the mail, said passbook showing a deposit to her credit on the 14th of August, 1924, of $150, which said amount, this plaintiff alleges, is totally inadequate and insufficient to compensate her for the terrible injury she has suffered and is still daily bearing, and must bear to the end of her life, if said sum is intended for said purpose, and therefore said money has not been received or used by her and no claim is, or has been, made by her to said money.

(4) That this plaintiff was negligently injured by the defendant on the 9th day of August, 1924, and this plaintiff is informed that the alleged release and check are dated the 10th day of August, 1924, one day thereafter, at a time when this plaintiff lay helpless in a hospital in great agony

from the pains of a broken hip bone, at a time when she was under the influence of drugs, at a time when she was no match for the energetic and ambitious agents of defendant, who were on her trail, and had been, from the very hour of her injury, at a time when she was not conscious of her rights, at a time when she did not realize the extent of her injury, all of which facts were well known to the agents of the defendant, and under such circumstances the agents unfairly and by fraud secured her signature to the release, if one exist, and the said release, if one exist, is null and void.

Wherefore, the plaintiff prays that the answer of the defendant setting up a release as a defense be dismissed.

## CHARGE

Mr. Foreman and gentlemen of the jury, for exactly a day and a half you have, with commendable patience and attention, listened to the testimony in this case, its conduct in the trial, and the order with which it has been presented by counsel. At this point in this investigation it becomes the duty of the Court to present to you, as best it can, the law that must control you in the rendering of your verdict. I desire to say at the outset, Mr. Foreman and gentlemen, that you are constituted by the law of this State the custodian of the facts in this case; whereas the Court has the keeping and the presentation of the law. I desire further to state to you that we are here, Mr. Foreman and gentlemen, in a quiet, dispassionate way, uninfluenced by any outside considerations uninfluenced by any prejudices or passions that sometimes naturally animate the human breast, to try this case, and with the Star of Truth as our guide, to try as best we can to arrive at the truth, and what is just and right in this case, Mr. Foreman and gentlemen, and to let your verdict represent that truth. If, Mr. Foreman and gentlemen, we would let any considerations—and I have no apprehension that a jury of this intelligence would do

so—but if we let any feelings or prejudices as to whether or not this party is a colored person or a white person, or whether or not the defendant in this case is a corporation, I say that if you would let influence of that character influence you in your deliberations in arriving at a verdict, why, Mr. Foreman and gentlemen, it would amount to a mockery of justice, and we had better, rather than not let our deliberations be controlled by what is right and what is just, we had better not, Mr. Foreman and gentlemen of the jury, have Courthouses, that are denominated and are supposed to be temples of justice, and where justice and right are meted out between man and man. I desire to state further, Mr. Foreman, in the consideration of this case, it is sometimes a right hard thing to do, particularly with one who is more or less a novice as a presiding Judge, to keep from stating, in undertaking to present the law of the case, the facts connected with it. As I have said, you are the ones to decide the facts in this case, and if, perchance, through inadvertence, I should let fall any words or any intimation that would suggest, Mr. Foreman and gentlemen, any impressions that the testimony has made upon my mind, then I ask you, as the law says you must do to discard it from your mind, for, finally and lastly, the Judge, as a practical matter and as a matter of law, has nothing to do with the facts of the case. His province, gentlemen, is to present the law.

Now, Mr. Foreman and gentlemen, this is an action by Nancy Gladden against the defendant, the Southern Railway Company, asking to recover damages to a claim amounting to $2,999 and some cents, alleged to have been sustained by the plaintiff by reason of physical injuries averred to have been received by plaintiff by reason of the negligence of the Southern Railway Company, the defendant herein. The complaint alleges that she is a citizen of this County, and that the defendant is a corporation of resources and possessed of great wealth, engaged in the business of hauling passengers and freight for hire, and has tracks and

roads and offices, etc. That allegation of the complaint, I understand, is admitted; there is no controversy as to that.

She further alleges in her complaint—this paper is called a complaint, Mr. Foreman and gentlemen, and it sets out what the plaintiff states to be her cause of action, or civil rights. She says on the morning of the 9th of August, 1924, the plaintiff became a passenger on one of the trains of the defendant, from Rock Hill to Ft. Mill, for which privilege she had purchased and had in her possession a ticket; and she states that, as such passenger, because that in law would constitute her being called a passenger, and I think I am justified in saying in this case there is no controversy here, and if I am not correct in that I hope I will be corrected by counsel. There is no controversy here, or at least serious controversy, but what she was a passenger on that train. She says that the agent or the conductor and agents and servants of the railway company did see or could see her, or by the exercise of ordinary care and diligence, should have seen and noticed, that the plaintiff was an old woman, very stout, and feeble, and on account of her age and feeble condition, was unable to walk steady, to be active, or to walk fast. She further alleges that at Ft. Mill she left her seat, and, in substance, without reading the complaint in full, that she attempted to alight from a passenger train of the defendant company, and that in so doing, and when she was on the steps and attempted to get therefrom, the train started suddenly and without warning and threw her down, and by and on account of said fall, her hip bone or leg was broken, and that the agents, the flagman or the conductor, of the defendant company, was standing on the platform of the coach from which plaintiff was descending, and did see, or could have, by the exercise of ordinary diligence and care, could have seen her when the plaintiff attempted to get off in her feeble condition, and should have had her, or should have prevented the train from starting suddenly and without warning to the plaintiff. And she further al-

leges that in consequence of that injury—this is what she alleges, gentlemen; this is not proven, this is what she states in her complaint—she further alleges that in consequence of that injury she was carried to the hospital, where she received, and as a direct and proximate cause of that injury, she has suffered in dollars and cents to the amount of $2,991, for which amount she asks a verdict at your hands. Now, practically and succinctly stated, that is the contention of the plaintiff. She alleges further as acts of negligence, that the defendant was negligent in the following particulars:

(1) In failing to furnish plaintiff, an old, feeble woman, assistance in alighting from the train. Now, that is the first allegation of negligence, in failing to furnish plaintiff, an old and feeble woman, safe means of descending from its train.

In failing to stop its train a sufficient period of time for the plaintiff to get off. In starting its train while plaintiff was in the act of alighting therefrom. In starting its train suddenly and without warning to plaintiff, and old woman, in the act of descending therefrom.

Now, those are the acts of negligence that the plaintiff alleges that the defendant corporation was guilty of on this occasion. I charge you right here, Mr. Foreman and gentlemen—I had better withdraw that part of it.

Now, the defendant comes into Court, and it, by its answer says: "It denies the truth of each and every allegation contained in said complaint as except as may be hereafter specifically admitted." In other words, the defendant denies the allegations of the complaint of the plaintiff except as they specifically admit in their answer, and puts the plaintiff to proof of the allegations of her complaint, except insofar as they are admitted.

Now, for a second defense, the defendant admits that on or about the date alleged in the complaint, the plaintiff received certain personal injuries while alighting, or just after she had alighted, from the defendant's train. The injuries,

to what extent, are not admitted, but she did receive, so the defendant says in his answer, some injuries.

(2) The defendant's train had stopped at the station of Ft. Mill, on said date, for a reasonable time to allow passengers to disembark, but the plaintiff, without exercising due care in that regard, failed to alight from its train within a reasonable time; and the aforesaid negligence of the plaintiff was the cause of her—was the alleged, or that, combining and concurring with the said alleged negligence of the defendant, contributed to the said injuries as the proximate cause.

I will undertake to explain what negligence is; and what contributory negligence is, and the meaning of proximate cause.

For a third defense, that on or about the date alleged in the complaint, plaintiff received certain injuries while she was alighting, or just after she had alighted, from its train at the station in Ft. Mill, S. C.; that thereafter and in consideration of the sum of $150 paid to the plaintiff by the defendant, the plaintiff executed and delivered to the defendant, under her hand and seal, a release in writing, and thereby released and having discharged the defendant from all claims and demands, actions or right of actions, or from the payment of any further sum of money, or rendering other satisfaction on account of her said injuries, that the defendant now pleads the plaintiff's said release as a full and complete bar to her alleged cause of action.

Now, gentlemen, these allegations in the complaint, there follows a reply that I should have next called your attention to.

Now, this is the reply to the third defense of the defendant's answer, and has reference, as you will catch from its reading, to the release, if there was a release. But she denies that she executed a release, mentioned in the answer, and that she received the $150 referred to in said answer.

17—S. C. R.—142

(2) That she received no knowledge of the contention of the defendant that she had executed a release until so advised by her attorneys, after the answer had been served.

(3) That she has been advised by her son that after the 15th of January, 1925, a passbook of the People's National Bank of Rock Hill was received in the mails, said passbook showing a deposit to her credit, on the 14th of August, 1924, for $150, which said amount this plaintiff alleges is totally insufficient to compensate her for the terrible injury she has suffered, and which she is daily bearing, and must bear to the end of her life. (Reading further particulars from complaint.)

Therefore, she, the plaintiff, contends, for several reasons, which I shall present to you gentlemen a little later on, that this release does not bar her action in this cause; the defendant contending, on the other hand, that it does bar her action.

Now, gentlemen, these are the allegations of the complaint, some of which you caught, are denied in the answer.

As applicable to these issues, I charge you, gentlemen, that where one is injured by the negligence of another, and as a proximate result of such negligence, the person so injured would be entitled to recover against the person so causing such injury, the damages thereby actually and naturally and proximately resulting from said injuries. That is a proposition of law subject to some propositions of law, gentlemen, that I will subsequently state to you. And, now, gentlemen, what is next?

I charge you that when one is a passenger on a public service corporation, that the law imposes upon the railway company the duty of the highest degree of care for the comfort and safety of its passengers. Now, the highest degree of care, gentlemen, doesn't mean that the railroad company guarantees the safety of the passenger. A railroad company is not an insurer of the life or the limb of one of its passengers; but the law does charge them with the duty of exer-

cising the highest degree of care; and the law—where one as a passenger is injured through the instrumentality of the railroad company—the law raises, gentlemen, what is known as a *prima facie* case of negligence, and that *prima facie* case of negligence runs through the whole case. But, Mr. Foreman, it is a presumption that is rebuttable and can be removed by testimony on the part of the railroad company, that is to say, Mr. Foreman, to put it in a practical, and probably simple and intelligent, way, one may be injured on a railroad train by an instrumentality of the railroad company, the law would say that *prima facie,* upon its face, the railroad company is negligent, but it is the province of the railroad company to come forward and say, "While that is true, your negligence was the proximate and direct cause of the injury"—that is to say, the injured party's negligence—"and that, therefore, while that presumption does arise, by reason of the fact of your negligence it is dissipated and done away with."

Now, gentlemen, we go a step further, and, probably, that I shall undertake to make myself as plain as practical, as I possibly can, so that we can understand each other, now, what is negligence? Negligence, Mr. Foreman, is the failure to exercise due care under the circumstances; it is the failure to exercise that degree of care and diligence which a person of ordinary care and prudence would have exercised under similar circumstances and in like condition. Now, that is negligence.

In this case the first question that would naturally and logically present itself to this jury would be, Was the plaintiff a passenger on that train? Was she injured? Was she injured by the negligence of the railroad company in any one of the particulars, Mr. Foreman and gentlemen, that I have read to you, and that are incorporated in this complaint? Beyond that you cannot go; nor does the law allow you to go. Was the defendant negligent?

I charge you this, Mr. Foreman and gentlemen, that where one is a passenger on a train and it is known, or by the exercise of reasonable care and diligence it can be ascertained, that a party who is a passenger on a train is in a depleted physical condition, or was old and perhaps physically weak, that they would require attention and aid, that if that knowledge was either imparted to the agent, to wit, the conductor or agent of the railroad company, or by the exercise of ordinary care it could be ascertained, then the law would make it the duty of the agent of the railroad company, Mr. Foreman and gentlemen, in a reasonable way to aid and assist that party who physically needed assistance in alighting from a train.

Now, those are questions of fact for you. Was this party physically disabled? Did the railroad authorities know that? If so, did they or did they not exercise reasonable care in assisting her with alighting from that train?

Now, gentlemen of the jury, there is another element of negligence in this, and it is, it is alleged by the plaintiff, on this occasion, the defendant company failed to stop its train at the station in question for a sufficient length of time for this plaintiff to alight therefrom, reasonable length of time; not that the railroad company has got to go to a party, or the agent of the railroad company and say, "Here is the station, and you can have all the time that you desire to get off." Nothing of that kind, but a reasonable time. You hear the law critized, gentlemen, but I may parenthetically state to this jury that the law, when reduced to its last analysis, is reasonable—is common sense; and, gentlemen, has stood the criticism of the ages. Now, what does the statute say about stopping at a station? I would prefer, Mr. Foreman, to read it to you, and I shall so do. Section 4909 of the Statute Law of 1922, Vol. 13, of this State, reads: (Reads.) Now, it says for a time sufficient. That means a reasonable time. A passenger would not be justified to lag along and detain a railroad company unnecessarily from

making its schedule time, because, while the railroad company, gentlemen, owes to the passenger the highest degree of care, that does not mean that it exonerates the passenger from at least exercising reasonable judgment in the matter of getting off a train. Now, it is a question of fact for you. Did this train stop a sufficient length of time to let this plaintiff off? It is a question of fact for you, Mr. Foreman. I charge you that if you find that it didn't, and that as a consequence thereof, and as a proximate and natural cause that flowed therefrom, she was injured—unless, Mr. Foreman and gentlemen, she contributed to her own injury as a proximate cause thereof—that this company would be liable to her in damages.

Now, we come to the next step in the case. This defendant alleges, among other things, as one of its defenses that this party contributed to her own injury as a proximate cause. Now, let's see what that means; let us try to answer. There have been lots of definitions given, but I will read from the book. What is contributory negligence? Contributory negligence is the want of ordinary care on the part of the person injured by the negligence of another, combining and concurring with that negligence and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred. Now, that definition, gentlemen, is right hard to understand. That is contributory negligence. It simply means this, Mr. Foreman: When a defendant comes into Court and sets up the defense of contributory negligence, it necessarily follows that the defendant who sets up that plea admits negligence on its own part; but it says by that plea that, while I was negligent, you were negligent also, and that your negligence concurring and, I might use the common expression, mixing with mine, was the first and moving and prime cause of the injury, without which the injury would not have occurred. I hope you catch that. And where a defendant who sets up contributory negligence shows that the proximate cause of the in-

jury was the negligence of the party that is suing, to wit, the plaintiff, and that the concurrence, or that the injury, if there was any injury, would not have occurred except for that negligence, then that is a good defense—then that is a good defense. Then, the question here for you·is this—I need not repeat myself, gentlemen, because it would have rather the result of mixing rather than clarifying things— now, the question for you is, if you conclude, as a matter of fact, that on this occasion the defendant company was negligent, you then inquire, was the plaintiff negligent? If so, was the plaintiff's negligence greater or more efficient or nearer and was a more efficient cause of the injury than the negligence of the defendant? If so, then a plaintiff could not recover, because, Mr. Foreman and gentlemen, the plaintiff would be guilty of contributory negligence.

Gentlemen, that covers the facts of the case as far as I can see.

Now, we come to the question of this release. I will state to you, however, here, that when a plaintiff comes into Court, the law puts upon them or upon her or upon him the duty of proving its case, not beyond a reasonable doubt, as is the law on the criminal side of the Court, but by the preponderance or greater weight of the evidence. He who alleges must prove. It is a sound proposition.

Now, what do I mean, Mr. Foreman, by a preponderance or greater weight of the evidence? Well; the common illustration is the best one that I know of. You take, gentlemen, in your minds, and put the testimony for the plaintiff in one balance of the scale; you take the testimony that has been introduced on the part of the defendant and you put it in the other balance of the scale and you weight it. If it balances evenly, Mr. Foreman, then the plaintiff fails to make out its case, or her case, by the preponderance of the testimony; but if the testimony of the plaintiff outweighs the testimony introduced by the defendant, then she would make out her case, and that would be a preponderance of

the testimony.  If, on the other hand, the testimony of the defendant outweighs the testimony of the plaintiff, then, in law, the defendant would have made out its case, and would be entitled to a verdict.

Now, gentlemen, in the matter of considering the manner of testimony.  It is not a question for the jury as to how many witnesses—it is not a question, gentlemen, that the plaintiff has introduced these many witnesses and the defendant these many.  Finally, and lastly, it is a question for the jury as to what testimony carries conviction to your minds, a conviction, Mr. Foreman and gentlemen of the jury, to your hearts and consciences.  After a review of all the testimony, the individual testimony of the witnesses, the substantial testimony, that may or may not surround the facts of the case, or the case, and after a review of all of testimony in the case, you come to the conclusion that the plaintiff, under the rules of law as the Court shall attempt, and has attempted, to give you, has made out her case, then you will find for the plaintiff.  If, on the contrary, you find that the balances are even, or that the defendant's testimony outweighs the testimony of the plaintiff, then it will be equally your duty to find the verdict for the defendant.

Now, Mr. Foreman, we come to the question of this release.  The defendant, as I have read to you from its answer, comes into Court and sets up what is known as a release, or, in other words, a contract, alleging, Mr. Foreman and gentlemen, that this release, or contract, is a complete bar to the claim, or case, of the plaintiff herein.  Now, gentlemen, I charge you this:  That the law does not make contracts for people.  The law does, however, when the Court is appealed to, construe and execute contracts, but the law does not make contracts for people.  The first question as to this release, I charge you, for you to consider, is this:  Did the plaintiff sign or execute the release and deliver it to the railroad company for a valuable consideration, which she received?  And the other question is, I charge you that

another question in connection with that release is, Did she execute it, or did she not execute it? If she did not execute it and deliver it, Mr. Foreman and gentlemen, that would be an end of the question of this release, because, of course, as a matter of business, and as a matter of law, unless you execute a paper, it has no binding effect; and, therefore, if this jury would conclude that this release was not executed and delivered for a valuable consideration by this plaintiff, then you could dismiss from your consideration the matter of the release as being a bar to her recovery. Now, that is the first step; let us see what the second step is.

Assuming—now, understand, gentlemen, that I am not intimitating in the slightest degree what I think about the facts of this case—but, assuming that you would conclude that she did execute the release, then the next step would be, is, Under what conditions did she execute it? When people enter into a contract, gentlemen, their minds must meet. There must be mutuality of thought, mutuality of understanding. There must be, in other words, a mutual agreement. Their minds must meet. One matter for you to consider in this case is, whether or not this plaintiff, if she did execute that release, was in a mental condition to understand, reasonably understand what she was doing. Did she have mental capacity sufficient to appreciate and to know and to understand, Mr. Foreman and gentlemen of the jury, the force and effect of that release, if there was a release, that is to say, if it was executed. Now, that is the commonsense of it, and that is the law. Now, if she did, Mr. Foreman, then it would bind her, and it would be a bar to her case; but if she did not, then we go a step forward, and what is that? I charge you this, Mr. Foreman, that though one may not be able to read or write, that, ordinarily when a paper is presented to them, to be a contract or note or any obligation or contract, that if she does not understand it on account of not being able to read or write, that the law imposes upon her the duty, if she can not read it herself,

to get some one else to read it to her, because, Mr. Foreman, as a rule, it is a solemn thing for one to execute a contract and put his name to it and then repudiate it; but if at the time you do it you have not the mental capacity, Mr. Foreman and gentlemen of the jury, to appreciate the purport of the contract, or its binding obligations, or its effect, then I state to you that a contract under conditions of that kind would not be binding. I don't mean to intimate to this jury that you would have to be—it would have to be—a particularly bright person or anything of that kind; but you would have to have sufficient mentality in order for any contract to bind any party, because, unless the mentality is there, there can be no mutuality of understanding. Now, that is two steps of this matter of this release, if there was any release. Now, we go to the third one.

Assuming, Mr. Foreman and gentlemen, that the plaintiff signed a release, assuming that at the time—and your mind, gentlemen, must be directed to the time that this release was executed, if it was executed, not the day before, except in so far as the day before might carry to your mind the idea that her mind was still in an unsettled condition by reason of any opiate, or anything that may or may not have been administered to her. Now, the third step, if you find, as a matter of fact, that she executed the release, if you find, as a matter of fact, that she had sufficient mentality to understand its purport, and in considering that question, gentlemen, you have a right to consider all the facts and circumstances connected with this transaction, and if you come to the conclusion that she had that degree of mentality, then the third question would arise: Was a fraud committed upon her? Was she overreached? Was she overpersuaded? Now, Mr. Foreman and gentlemen, in connection with the matter of fraud, I charge you a misrepresentation, in order to be fraudulent in law, must be as to a material fact, then or theretofore existing, and must have been known to the party making it to be false, and intended

to mislead, deceive and defraud; and the party asking for relief on the ground that they were made, must prove that the representations were untrue, and that he at the time believed them to be true, and, relying on them as true, was thereby induced to make the contract in question.

I charge you, Mr. Foreman, that fraud is never presumed, but must be proven by the party alleging it, and that by a preponderance or greater weight of the evidence. Now, that is the legal definition of fraud.

Now, I charge you this, Mr. Foreman, that there are several ways of proving fraud in law, like there are several ways of proving negligence in law, or proving agency in law. Fraud may be proved by direct representations or misrepresentations; by the statement of a fact or circumstance that did exist, or existed at that time. That is what in law we call direct testimony. Fraud may also be proven, as negligence may be proven, by circumstantial testimony; that is to say, there might be presented to a jury such a condition of circumstances from which a jury might infer fraud; in other words, Mr. Foreman and gentlemen, it is not absolutely necessary in law, nor will I undertake to say that it is the most satisfactory way of proving fraud, that it has to be proved by word of mouth. Now, you take this case, you take the facts and circumstances surrounding the case, as has been presented on this stand, you weigh them, weigh them honestly, and I know you will weigh them carefully and decide, Mr. Foreman and gentlemen, that if the contract was signed, and if there was sufficient mentality on the part of this plaintiff to know what she was doing, Was there a fraud committed upon her in the execution of this contract? Now, that is a practical question; that is the question for you, Mr. Foreman, in so far as this release is concerned.

I state to this jury if you find those three propositions in favor of the railroad company, that it is absolutely a bar to this case, and if it supersedes, goes ahead, of any other con-

sideration in the case, and if you find that that release was executed in good faith, if executed, and if it was done when she had the sufficient mentality to understand what she was doing, and if no fraud was committed, then, Mr. Foreman, and gentlemen of the jury, it would bar her right of recovery in this case, and your verdict would be for the defendant, and you need not go any further. But, if on the contrary, you find those propositions against the contention of the defendant, then you consider the other phase of the case as the Court has undertaken to present it to you.

I might charge you, without getting on the facts of this case, that there are certain badges termed in law, badges of fraud, yet I do not need go into that; I shall not attempt to state the testimony along that line.

I don't know, Mr. Foreman, that there is anything else that I can say to you. I have tried to present the matter of negligence; I have tried to present to you the matter of contributory negligence; I have tried to present to you the matter of the release. I have told you, and I repeat, Mr. Foreman and gentlemen, that if this railroad company was negligent in any one of the particulars alleged in this complaint, the copy of which, or the original of which, I leave with you, and that she did not, as a moving and proximate and direct cause cause her own injury, and if the negligence of the railroad company has been established to this jury by the preponderance of the testimony as I have undertaken to illustrate it to you, and that this release does not bar her recovery under the facts of this case as you may find them, then it will be your duty, Mr. Foreman, to find for the plaintiff. If, on the contrary, you find that the railroad was not negligent, or its agents—if you find further, although they were negligent, that the negligence of the plaintiff, if she was negligent, was the proximate direct cause of the injury, then in that event, you would find for the defendant. Or if you go on and find that this release was executed *bona fidedly,* that she was in the mental condition to execute it,

and that no fraud was committed, then that would be a bar to her recovery. If, on the contrary, you do not find those facts to exist, and you do find the other facts as to negligence in favor of the plaintiff, then she would have a right to recover.

Now, upon what basis will you predicate, if you find for the plaintiff, damages? You know the law says, Mr. Foreman, that where one is injured, that she has the right to recover, if she is entitled to recover, damages for physical and mental suffering, that is to say, such damages, gentlemen, as result as a proximate cause, and as a direct cause, of the negligence of the railroad company. She might suffer, Mr. Foreman and gentlemen, a thousand deaths, and if not chargeable to the railroad company, you, of course, could not find for the plaintiff. Now, you can consider that, if you find that the plaintiff is entitled to recover, her mental suffering, if any, her physical suffering, if any, the impairment to her capacity to work, if she did work, not only present, but in the future, and any damages, Mr. Foreman, that you think that would reasonably compensate her for the injury that she has suffered. Now to what extent can you find damages? Anywhere from one cent to $2,999, that being a matter exclusively for that jury.

Now, gentlemen, is there anything further?

Mr. Hamilton: Your Honor, I would like to state this, that the railroad company contends that the plaintiff was guilty of contributory negligence, but, as I understand it, that does not necessarily mean that, by the railroad pleading contributory negligence on the part of the plaintiff, do not necessarily mean that the defendant itself admits negligence.

Court: If the plaintiff admits negligence—I think that a plea of contributory negligence—the matter of contributory negligence, necessarily involved the idea, the legal proposition, that the party said, "Yes; I am negligent, but the

negligence of the other party was the greater cause of the injury—"

Mr. Hamilton:   I think the answer reads this way:   The negligence of the defendant combining with the plaintiff, if any—I would like for you to state to the jury the mere fact that the railroad company, defendant, pleads contributory negligence, is not necessarily an admission on its part that it was negligent. All those facts are for the jury.

Court:  All those facts are for you, gentlemen, I charge you that, not necessarily admitting them to be negligent.

Now, I have one request to charge by the railroad company:  "I charge you that the law imposes upon the railroad company the duty to stop its trains for a sufficient length of time to allow passengers, in the exercise of due care, to alight therefrom in safety."   Well; that is what the statute says.  "I also charge you that when a passenger is injured through the instrumentality of the railroad company, a presumption arises that the railroad company was negligent." I have already charged you that, and I so charge you now. "In this connection I charge you that if a railroad company has stopped its train for a reasonable length of time to enable passengers to alight, and a passenger, through his or her own fault, negligently fails to alight therefrom, then the railroad company is no longer under the obligation to exercise the highest degree of care, and an injury to such a passenger does not raise a presumption of negligence against the railroad company."   Well; I charge that, gentlemen.   As I catch it it says they are obliged to stop for a reasonable time, as I have explained to you; but if stopped a reasonable time, the passenger does not take advantage of that time, and by her own negligence fails to alight from the train within the time that is reasonable, that would be a dissipation or wiping out, Mr. Foreman and gentlemen of the jury, of the idea of *prima facie* showing of negligence against the railroad company, where one is injured by its instrumentality, as a passenger.   I so charge you.

Now gentlemen, I don't know that there is anything else that I can say, unless there is something more that the attorneys can call to my attention.

Mr. McDonald: As to the burden of proof, validity of the release, the burden is upon the plaintiff. We have to prove execution of the release.

Court: I charge you this, gentlemen, that if the defendant railroad company has proved that this release was executed, and that this party had mental capacity to execute it, and no fraud was committed, it would be binding, and that the burden of proof to prove fraud, or to prove mental incapacity, or to prove that the release wasn't signed, is upon the plaintiff, because she—

Mr. McDonald: We assume the burden of proving the execution of the release.

Court: Yes, sir, the defendant assumes the burden of the execution of the release; the plaintiff assumes the burden of proof, by the preponderance of the testimony, as to whether or not she was in the mental capacity to execute the release, or whether or not, as a matter of fact, she did execute it. Now, I think, gentlemen, if I talk any more I will confuse you.

Mr. McDonald: We have no further requests.

Mr. Hamilton: No further requests.

Court: No further requests. Now, gentlemen, you will be handed the pleadings in this case. I believe that is the custom, I have never known the reasons for it. This is what is known as the complaint, and you will write your verdict on the back of the complaint, Mr. Foreman; and if you find for the plaintiff, you will write: "We find for the plaintiff" so many dollars, writing it out, and not putting it in figures, and sign your name, Mr. Foreman, and sign your name with that under it. If you find for the defendant, you just simply say: "We find for the defendant," and sign your name as foreman. Take the record, Mr. Foreman and gentlemen, and consider the case, and take the case; and if,

in the progress of your consideration, gentlemen, the Court can, in its humble way, enlighten you further as to the law of the case, it is your province, and it will be my privilege and pleasure, Mr. Foreman, to undertake to do so.

Mr. Hamilton: Would like for the jury to have the bene-fit of any of the exhibits.

Court: Yes, sir; you gentlemen can have the benefit of any of the exhibits, that is to say, any of the exhibits intro-duced in testimony, you may desire.

## EXCEPTIONS

(1) Because his Honor erred in refusing to direct a ver-dict for the defendant upon the first ground stated in its motion which was as follows: "That the testimony shows, and no other reasonable inference can be drawn from the testimony, that the plaintiff duly executed a release in favor of the defendant, for the personal injuries about which she complains in her complaint; that the said release was based upon a valuable consideration; and there is no testimony in the case to go to the jury, or in the pleadings, tending to show that there was any fraud or misrepresentation in the procurement of said release by the defendant; and said release is a complete bar to the plaintiff's alleged cause of action"—the error being that no other reasonable inference can be drawn from the whole testimony except the inference that the plaintiff duly executed a release in favor of the de-fendant as alleged by it for a valuable consideration, and there was no evidence tending to show fraud or misrepresen-tation in the procurement of said release, and that said release was a complete bar to the plaintiff's alleged cause of action.

(2) Because his Honor erred in refusing to direct a ver-dict for the defendant upon the second ground stated in its motion, which was as follows: "That there is no testimony to go to the jury independently of said release, tending to

show that there was any breach of duty on the part of the defendant, which was the proximate cause of plaintiff's alleged injuries"—the error being that independently of said release, there was no testimony tending to show the breach of any duty on the part of the defendant owing to the plaintiff, which was the proximate cause of her alleged injuries.·

(3) Because his Honor erred in refusing to direct a verdict in favor of the defendant upon the third ground stated in its motion, which was as follows: "That the reply to the answer of defendant, setting up the release, does not show any facts, or allege any facts that would justify the Court in setting aside said release"—the error being that the reply of the plaintiff to defendant's answer does not allege any facts that would justify the Court in setting aside said release or submitting such issue to the jury.

(4) Because his Honor erred, after correctly defining to the jury what contributory negligence is, in charging the jury as follows: "Now, that definition, gentlemen, is right hard to understand. That is contributory negligence. It simply means this, Mr. Foreman: When a defendant comes into Court and sets up the defense of contributory negligence, it necessarily follows that the defendant who sets up that plea admits negligence on its own part; but it says by that plea that, while I was negligent, that you were negligent also, and that your negligence concurring and, I might use the common expression, mixing with mine, was the first and moving and prime cause of the injury, without which the injury would not have occurred. I hope you catch that"— the error being that by such charge his Honor modified the definition as to contributory negligence and placed upon the defendant the burden of showing that any negligence on the part of the plaintiff would not constitute contributory negligence on her part, unless it was the first and moving and prime cause of her injury, whereas the law is that if such negligence contributed in any degree as a proximate cause,

it would bar her right of recovery, and his Honor should have so charged the jury.

(5) Because his Honor further erred in charging the jury with reference to contributory negligence and after stating to them the approved definition thereof, in charging the jury, as set out in exception 4, as follows: "Now, that definition, gentlemen, is right hard to understand. That is contributory negligence. It simply means this, Mr. Foreman: When a defendant comes into Court and sets up the defense of contributory negligence, it necessarily follows that the defendant who sets up that plea admits negligence on its own part, etc."—the error being that such charge was not a correct statement of the law of contributory negligence, and was prejudicial to the defendant in that it destroyed the effect of the general denial in the answer of the defendant, but stating to the jury, "by the plea of contributory negligence, defendant admits negligence on its part," thus depriving the defendant of its defense under its general denial.

(6) Because his Honor further erred in charging the jury as to contributory negligence as follows: "Then the question here for you is this—I need not repeat myself, gentlemen, because it would have rather the result of mixing rather than clarifying things—now, the question for you is, if you conclude as a matter of fact that on this occasion the defendant company was negligent, you then inquire, Was the plaintiff negligent? If so, was the plaintiff's negligence greater or more efficient or nearer and was a more efficient cause of the injury than the negligence of the defendant? If so, then a plaintiff could not recover, because, Mr. Foreman and gentlemen, the plaintiff would be guilty of contributory negligence"—the error being that such charge as to contributory negligence was clearly erroneous, as a matter of law, and placed the burden upon the defendant of showing that the plaintiff's negligence must have contributed as the greater or more efficient or nearer efficient cause of her

injuries, whereas the law bars a plaintiff from recovering if
his negligence contributes in the slightest degree, as a proxi-
mate cause, to his injuries, and his Honor should have so
charged the jury.

*Messrs. McDonald & McDonald,* and *Frank G. Tomp-
kins,* for appellant, cite: *Written instrument sufficiently
proved by testimony of subscribing witnesses thereto where
no competent evidence to the contrary:* Green on Ev., Sec.
569; 1 Whart, on Ev., Sec. 689; 22 C. J., 925, 935, 937,
943, 967; 1 McM., 305; 11 S. C., 439; 29 S. C., 170; 93
S. C., 580; 49 S. C., 159; 105 S. C., 345. *When evidence as
a whole susceptible of only one reasonable inference, question
is one of law for Court and verdict may be directed:* 124
S. C., 87; 126 S. C., 315; 71 S. C., 438; 79 S. C., 338; 107
S. C., 473. *Should have directed verdict for defendant in
case at bar:* 91 S. C., 332; 131 S. C., 222; Id., 12; 34 S. E.,
70; 69 S. E., 676. *Defendant who sets up defense of con-
tributory negligence does not admit negligence on his part:*
70 S. C., 474; 83 S. C., 28; 84 S. C., 389. *Cases dis-
tinguished:* 122 S. C., 361. *Contributory negligence:* 15
S. C., 453; 40 S. C., 82; 67 S. C., 68; 20 R. C. L., 101, 145;
59 S. C., 311; 38 Ia., 293; 81 A. S. R., 911; 81 S. C., 112;
2 Cooley on Torts, 438, 445; Sherman & Redfield on Neg.,
Sec. 95; A. & E. Enc. L., 381; 36 A. S. R., 846; 55 Am.
Dec., 668; 15 S. C., 443; 19 S. C., 28; 21 S. C., 497; 23
S. C., 538-542; 56 S. C., 94; 30 S. C., 165; 61 S. C., 482-
87; 91 S. C., 517; 109 S. C., 293.

*Messrs. Gaston, Hamilton and Gaston,* for respondent,
cite: *Mental capacity to execute release, issue for jury:* 119
S. C., 14. *Whether release procured by fair means issue for
jury:* 113 S. C., 267; 110 S. C., 393; 106 S. C., 203; 122
S. C., 518; 66 S. C., 81; 89 S. C., 285; 84 S. C., 41. *Fraud:*
96 S. C., 70; 113 S. C., 324. *Plaintiff not estopped from
denying release at bar:* 84 S. C., 275; 61 S. C., 545. *Pas-
senger entitled to highest degree of care at hands of carrier:*
55 S. C., 381; 62 S. C., 130; 77 S. C., 373; 90 S. C., 416.

*On a motion for directed verdict evidence must be considered most favorably to plaintiff; facts in dispute submitted to jury:* 132 S. E., 47; 133 S. E., 704.  *Contributory negligence:* 109 S. C., 293; 62 S. C., 140; 61 S. C., 345; 73 S. C., 491; 70 S. C., 491; 86 S. E., 13; 122 S. C., 361; 56 S. C., 91; 70 S. C., 470; 67 S. C., 147; 76 S. C., 553; 72 S. C., 172.  *Judge's charge on contributory negligence must be considered as a whole; when definition broad and true it is sufficient:* 80 S. C., 7; 73 S. C., 481; 91 S. C., 104; 93 S. C., 125; 111 S. C., 111; 94 S. C., 230.

January 3, 1928.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The plaintiff alleged, among other things, that on the morning of August 9, 1924, she became a paid passenger on one of defendant's passenger trains from Rock Hill to Ft. Mill, South Carolina; that the conductor and other agents of the defendant saw or should have seen that she was an old woman, very stout and feeble; that at Ft. Mill she left her seat to alight from the train; that while she was attempting to go down the steps of the coach, the train suddenly started without warning, she was thrown down, her hip bone was broken, and she was rendered a helpless invalid for life.  She alleged that her injuries were caused by the negligence of the defendant in the following particulars:

"(a) In failing to furnish plaintiff, an old, feeble woman, assistance in alighting from its train.  (b) In failing to furnish plaintiff, an old, feeble woman, adequate and safe means of descending from its train.  (c) In failing to stop its train a sufficient period of time for the plaintiff to safely get off.  (d) In starting its train.  (e) In starting its train suddenly and without warning to plaintiff while she, an old woman, was in the act of descending therefrom."

The defendant admitted by its answer that the plaintiff received some injuries at the time and place mentioned in

the complaint, while alighting or just after she had alighted from the defendant's train, but alleged that such injuries were due solely to her own negligence. It also set up the plea of contributory negligence, and pleaded as a bar to the action a release alleged to have been executed by the plaintiff in consideration of $150 paid her by the defendant.

The plaintiff, replying, denied the execution of the release; alleged that the amount named therein was totally inadequate to compensate her for her injuries; and alleged further that the said release was null and void by reason of the fact that at the time it was alleged to have been procured, the day after she was injured, she was lying in the hospital suffering great agony and pain from her broken hip, or was under the influence of drugs and no match for the defendant's agents, and was not conscious of her rights and did not know the extent of her injuries, which was known to the defendant, and that her signature to the said alleged release was procured by fraud, unfair methods, and misrepresentation on the part of the defendant.

The case was tried in November, 1925, in Chester county. At the close of all the testimony, defendant made a motion for a directed verdict which was overruled by the presiding Judge; the jury found for the plaintiff in the sum of $2,500.

The defendant's exceptions are six in number. The first three impute error to the trial Judge in refusing to direct a verdict for the defendant upon the grounds stated in its motion: (1) That no other reasonable inference could be drawn from the testimony than that the plaintiff, for valuable consideration, executed a release in favor of the defendant, for the personal injuries alleged to have been received by her, and that there is no evidence of fraud or misrepresentation on the part of the defendant in the procuring of the said release; and (2) that there was no evidence tending to show negligence or a breach of duty on the part of the defendant, independently of the said release, as the proximate cause of the plaintiff's injuries.

As there must be a new trial we shall not go at length into the testimony adduced in the case. It is enough to say that an examination of the testimony reveals that the trial Judge properly submitted to the jury the question of the validity of the release as well as the question of the defendant's negligence as the proximate cause of the plaintiff's injuries. There was testimony tending to show that the day after the accident occurred, the plaintiff, an old negro woman, while in the hospital, and while under the influence of drugs or suffering from the shock of the severe pain that naturally resulted from her injuries, signed a release, in consideration of $150 paid her by the defendant, releasing and discharging the defendant from all liability, etc., that might arise from her said injuries. Under all the circumstances, it was a question for the jury to say whether she freely and voluntarily executed the release, or whether, not knowing or understanding what she was doing, she was induced to sign it by misrepresentation, fraud or coercion.

As to the second ground there was testimony tending to show that while the plaintiff was attempting to get down from the steps of the coach, there was a sudden jerk of the train which threw her to the ground resulting in painful injuries. The defendant, as a common carrier of passengers, owed to the plaintiff, as a passenger on its train, the highest degree of care; and whether or not it was guilty of negligence in the exercise of its duty in that respect was, under all the testimony, a question for the jury.

By its fifth exception the defendant imputes error to the trial Judge in charging the jury that one who sets up the defense of contributory negligence admits negligence on his part. While, as stated by the Court in *Cooper v. Railway Co.*, 56 S. C., 91; 34 S. E., 16, "contributory negligence by a plaintiff can never exist except when the injury has resulted from the negligence of defendant as a concurring proximate cause," it does not follow that by the plea of contributory negligence the defend-

ant admits negligence on his part.   However, while the trial Judge charged the jury as complained of, when the error was called to his attention by Mr. Hamilton, one of the attorneys for the plaintiff, he corrected same by proper instructions on that point.   The error complained of was thus rendered harmless.

The sixth exception presents a more serious question.   In charging the jury on contributory negligence, the trial Judge told them that if they should reach the conclusion that the defendant company was negligent, they should then inquire as to whether the plaintiff herself was negligent, and added:   "If so, was the plaintiff's negligence greater or more efficient or nearer or was a more efficient cause of the injury than the negligence of the defendant?   If so, then the plaintiff could not recover * * * because the plaintiff would be guilty of contributory negligence."

It is true that the trial Judge in his charge gave a correct definition of contributory negligence, but later he charged the jury as indicated above.   We think that, in spite of the correct definition at first given by the Court, this later charge on the question would lead the jury to conclude that, although the plaintiff might be guilty of negligence to some extent, combining and concurring with the negligence of the defendant as the proximate cause of the injury, still, if such negligence, upon comparison with the negligence of the defendant, did not exceed in quantity, or was not a greater or more efficient cause of the injury than the defendant's negligence, it would not amount to contributory negligence barring recovery on the part of the plaintiff.

A good definition of contributory negligence, cited with approval in a number of our cases, is found in 7 Eng. & Am. Ency. of Law (2d Ed.) p. 371:

"Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of

another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred."

The meaning of the word "contributory," as stated in *Easler v. Railway Co.*, 59 S. C., 311; 37 S. E., 938, "necessarily implies that there is some other negligence to which it contributes in bringing about the injury complained of—both being a proximate cause and the two combined and concurring together constitute the proximate cause of the injury."

It is a well established rule that "contributory negligence to any extent will always defeat a recovery."

See *Gunter v. Manufacturing Company*, 15 S. C., 443; *Thackston v. Railway Co.*, 40 S. C., 80; 18 S. E., 177. *Easler v. Railway Co.*, *supra*; *Cooper v. Railway Co.*, *supra*.

From the foregoing it is clear that his Honor's charge was erroneous. Whatever may be said in favor of its wisdom and justice, the doctrine of comparative negligence does not prevail in this State. The defendant's sixth exception is sustained.

We do not deem it necessary to consider the fourth exception. The judgment of the Circuit Court is reversed and the case remanded for a new trial.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE COTHRAN concur. MR. JUSTICE BLEASE did not participate.

MR. JUSTICE CARTER (dissenting): While I concur in the opinion of Mr. Justice Stabler in this case, in overruling Exceptions 1, 2, 3, 4 and 5, and, also concur in the view expressed that the language used by his Honor, the Special Presiding Judge, in his charge to the jury, as recited and complained of by appellant under Exception 6, is an incorrect statement of the law, as recognized in this State, I do not agree with the view that the judgment should be reversed on account of this error. Under this exception (6)

the appellant imputes error to his Honor, the Special Presiding Judge, in charging the jury as follows:

"Then the question for you is this—I need not repeat myself, gentlemen, because it would have rather the result of mixing rather than clarifying things—now the question for you is, if you conclude as a matter of fact on this occasion the defendant company was negligent, you then inquire, was the plaintiff negligent? If so, was the plaintiff's negligence greater or more efficient or nearer and was a more efficient cause of the injury than the negligence of the defendant? If so, then a plaintiff could not recover, because, Mr. Foreman and gentlemen, the plaintiff would be guilty of contributory negligence."

As stated in the opinion of Mr. Justice Stabler, the doctrine of comparative negligence does not exist in this State (except, of course, in cases falling within Sections 4914, 4915, Volume 3 of the Code of South Carolina 1922, which has reference only to railroad employees) and if it was the intention of the trial Judge to submit such issue to the jury it was error. In the use of the language attributed to the trial Judge we think he inadvertently made reference to the rule of proximate cause, while charging the jury on contributory negligence, and that there was no intention of charging the law of comparative negligence. The real question for the consideration of this Court, according to our view, is not, whether the language attributed to his Honor, the Special Judge presiding, was erroneous (and we concede that it was erroneous), but the real question is, Should the judgment of the lower Court be reversed on account of this error?

This Court has held in numerous cases that unless an error in the charge was misleading to the jury and calculated to cause the jury to render a different verdict, that the error should be regarded as harmless; also, that where the trial Judge states a proposition clearly and correctly in

one part of his charge, the fact that he makes an erroneous statement in another part of his charge does not necessarily give ground for a reversal of the judgment, but the charge must be taken as a whole. Further, this Court has in many cases held that it was the duty of counsel to call the Judge's attention to an inadvertent statement of the law and issues; also, in many decisions this Court has refused to reverse the judgment of the lower Court when it was convinced that the verdict was amply supported by the facts in the case, and that any fair-minded jury would likely under such state of facts render a similar verdict, even though error appeared in the course of the charge to the jury.

As to the charge of his Honor, the Special Presiding Judge, on the question of contributory negligence being erroneous, we call attention to the fact that the record shows that in other parts of his charge the law on contributory negligence was charged correctly. In one portion of his Honor's charge we find the following:

"Now, we come to the next step in the case. This defendant alleges, among other things, as one of its defenses that this party contributed to her own injury as a proximate cause. Now let us see what that means; let us try to answer. There have been lots of definitions given, but I will read from the book. What is contributory negligence? Contributory negligence is the want of ordinary care on the part of the person injured by the negligence of another, combining and concurring with that negligence and contributing to the injury as a proximate cause thereof."

We think it conceded that this is a clear statement of the rule on contributory negligence. After this charge by his Honor, later on his Honor charged the jury as follows:

"Now, that definition, gentlemen, is right hard to understand. That is contributory negligence. It simply means this, Mr. Foreman: When a defendant comes into Court

and sets up the defense of contributory negligence, it necessarily follows that the defendant who sets up that plea admits negligence on its part, but it says by that plea that 'While I was negligent, that you were negligent also, and that your negligence concurring and, I might use the common expression, mixing with mine, was the first and moving and prime cause of the injury, without which the injury would not have occurred.' "

I think the only objection that could be raised to this part of the charge quoted is with reference to the defendant admitting negligence. With that exception the charge is not only not objectionable, but admittedly correct. At the close of the charge counsel for the plaintiff called this to the attention of the Court and the correction was made and the jury instructed on the same, so that the jury had a clear and correct statement of the rule on contributory negligence. This part of the charge must be taken in connection with that portion complained of by the appellant under its sixth exception, and when the charge is considered as a whole it could hardly be said that the jury was misled or that the defendant was prejudiced.

We must also keep in mind the fact that it is the duty of counsel representing the litigants to the cause to call the Court's attention to a misstatement of the issues and to any inadvertent statement in the course of the charge. The record in this case discloses that his Honor, the special presiding Judge, not only manifested an attitude of perfect fairness to the parties litigant throughout his charge and the entire course of the trial of the case, but that he manifested a desire for the co-operation of counsel representing the parties to the cause and invited them to call to his attention any matter. In view of this attitude on the part of the Court, I think it was especially the duty of counsel to bring to his Honor's attention any inadvertent or misstatement of the issues or law. In response to this invitation and request

counsel for the plaintiff-respondent called to his Honor's attention an erroneous statement made with reference to what was said about the defendant admitting negligence under the plea of contributory negligence, and, at the request of counsel for the plaintiff-respondent, his Honor made the correction, and stated to the jury that the defendant did not admit negligence by setting up the defense of contributory negligence. The record does not disclose that counsel for the defendant-appellant at that time brought to the attention of the Court any matter. Later on, however, when the special presiding Judge again gave counsel an opportunity to bring to his attention any matter, counsel for defendant-appellant did call the Court's attention to certain questions, and his Honor readily complied with the suggestions and requests. But counsel for appellant did not, so far as the record discloses, in any form bring to the Court's attention the matter appellant is now complaining of under the sixth exception. Why was it not done? Evidently because it escaped counsel's attention, or that counsel regarded it as of such little importance that it was not thought worth while. Evidently, if counsel had regarded the matter as likely to affect the verdict, there would have been no hesitation in bringing the same to the attention of the Court, knowing that the special presiding Judge earnestly desired to be absolutely fair to the parties litigant. If the matter complained of under this exception was of so little concern as to escape the attention of counsel, or was regarded as of not sufficient importance to be brought to the attention of the Court, it cannot be claimed to have affected the verdict of the jury. If it escaped the attention of learned and experienced counsel, until after the trial of the case, the jury could hardly be expected to have taken notice of it, and we are satisfied that the defendant was not prejudiced.

Furthermore, the purpose of the Court is to do justice between the parties before it, and where justice has been

done by the verdict of the jury, the Court should not set the judgment aside and order a new trial. That justice was done by the verdict of the jury in the case at bar is evident from the testimony appearing in the case for appeal. The testimony on the part of the plaintiff tends to substantiate the allegations contained in plaintiff's complaint in every particular, which complaint will be reported; and the Court could not expect any other fair-minded jury to render a different verdict under this testimony. Therefore, the judgment should stand.

In support of this position I call attention to some of the decisions of this Court:

The recent case of *Bennett v. Ott,* 141 S. C., 397; 139 S. E., 853, clearly supports my position. Quoting from the opinion in that case, written by Mr. Justice Cothran, wherein he referred to the fact that the presiding Judge had stated the law incorrectly, we note the following language:

"This principle was again and again declared by the presiding Judge; the portion of the charge complained of was plainly an inadvertence, which could not reasonably have effaced from the minds of the jury the correct principle announced. Moreover, the issue of fact was so sharply drawn that we cannot think that such inadvertent statement of the burden of proof could have prejudicially affected the rights of the defendant."

In the opinion of Mr. Chief Justice Gary, in the case of *Thornton v. Spartan Mills,* 98 S. C., 272; 82 S. E., 415, in dealing with the question of reversing a judgment of the lower Court because of an incorrect statement of the law in the course of the charge of the trial Judge, Mr. Chief Justice Gary stated:

"When those portions of the charge quoted in these exceptions are considered in connection with the entire charge, there is no reasonable ground for supposing that the result

would have been different if his Honor, the presiding Judge, had not so charged."

Such is my position in the case at bar.

Mr. Justice Jones, afterwards Chief Justice, as the organ of the Court, in the case of *Davis v. Railroad,* 75 S. C., 307; 55 S. E., 527, used this language:

"It would greatly harass the practical administration of the law for the appellate Court in reviewing charges to the jury to become hypercritical or a stickler for the technical rules of philology in every phrase and clause, and reverse verdicts for some loose expressions or some silent misuse of a word, when the general import of the charge stated the law. Any portion of a charge to which exception is taken should be fairly construed with reference to the clear tenor and import of the whole, and as an effort to explain the law of the case to men of ordinary or average education and intelligence. The average juryman has little knowledge and less concern about fine distinctions, but generally has a desire and capacity for sufficient information to enable him to do substantial justice between the parties."

If we follow this reasoning, so clearly stated by Mr. Justice Jones, afterwards Chief Justice, the case at bar, as we view the appeal, cannot be reversed. This language of Mr. Justice Jones was quoted with approval by Mr. Justice Watts (now Chief Justice) in the case of *Teddars v. Railway Co.,* 97 S. C., 162; 81 S. E., 474.

In the case of *Edgefield Manufacturing Co. v. Maryland Casualty Co.,* 78 S. C., 81; 58 S. E., 971, Mr. Justice Woods, in rendering the opinion of the Court, stated:

"But this Court should not order a new trial where from an examination of the record it has no doubt the verdict of any fair jury would have been the same, even if no error had been committed. In such a case the errors should be regarded not prejudicial."

This salutary rule, so clearly stated by Mr. Justice Woods, was quoted and affirmed by this Court in the case of *Dennis v. Columbia Elect. St. Ry. L. & P. Co.,* 93 S. C., 295; 76 S. E., 711, in which case the opinion was written by Mr. Justice Hydrick; and also quoted with approval in the case of *Lowe v. Ottaray Mills,* 93 S. C., 426; 77 S. E., 135, in which case the opinion was written by Mr. Justice Watts (now Chief Justice). An examination of the record of the case at bar, in my view, will show clearly that the case falls within this salutary rule announced by Mr. Justice Woods, and the judgment should not be reversed. This rule quoted above has been recognized by this Court for many years. In the case of *Ingraham v. South Carolina Ins. Co.,* 3 Brev., 522, the Court stated the rule thus: "Where the verdict is right on the merits, the judgment will not be reversed." The same principle was stated by this Court in the case of *Bolan v. Peeples,* 1 Brev., 109. The same rule was, also, again followed by this Court in the case of *Devereux v. Champion Press Co.,* 17 S. C., 67.

After a careful study of the record in this case, I am convinced that justice has been done by the verdict of the jury, and that the Court should not grant a new trial. For this reason, and for the reasons above assigned, I most respectfully dissent from the view expressed by Mr. Justice Stabler in sustaining the sixth exception and reversing the judgment of the lower Court, and think that the judgment of this Court should be that it is the judgment of this Court that the exceptions are overruled and the judgment of the lower Court affirmed.

Let the complaint, answer, reply, charge, and exceptions be reported.