**PILOT FREIGHT CARRIERS, INC., a Corporation, Plaintiff,**

v.

**John A. SPIVEY, Defendant.**

**Civ. A. No. 66–838.**

United States District Court
D. South Carolina,
Florence Division.

Dec. 29, 1967.

Mark Buyck, Jr., Willcox, Hardee, Houck, Palmer & O'Farrell, Florence, S. C., for plaintiff.

Connor & Connor, Kingstree, S. C., for defendant.

## ORDER

SIMONS, District Judge.

This action was commenced by plaintiff against defendant by filing complaint on December 12, 1966 in which it seeks to recover $15,000 actual and punitive damages resulting from a collision between plaintiff's Diamond-T tractor-trailer unit and defendant's farm tractor. No counterclaim was filed by defendant as he has filed an action against plaintiff in the Court of Common Pleas of Williamsburg County.

Defendant's answer contains a general denial and further pleads contributory negligence on the part of plaintiff. Plaintiff's testimony consisted of that of Patrolman Harvey B. Bethea, Harold L. Heath, driver of plaintiff's tractor-trailer, Herman J. Bower, manager of the Diamond-T dealership who testified as to its replacement and rental value, and Henry T. Dunn, an employee of Pilot Freight Carriers, Inc.

Defendant's testimony consisted of that of defendant John A. Spivey, owner of the farm tractor involved, Barry E. Spivey, defendant's son and driver of his farm tractor on the occasion in question, Harrison Ned and Ellie Montgomery.

In accordance with Rule 52(a) of the Federal Rules of Civil Procedure, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff is a corporation organized under the laws of North Carolina with its principal place of business in Winston-Salem, North Carolina, and is a citizen and resident of said state.

Defendant is a citizen and resident of Williamsburg County, South Carolina.

By stipulation of the parties it has been agreed that Barry Spivey, son of John A. Spivey, defendant and owner of the farm tractor, was acting within the course of his employment at the time of the accident.

The accident occurred on U. S. Highway No. 52 in Williamsburg County, South Carolina, at a point approximately 7.3 miles south of Kingstree, South Carolina about 8:00 a. m. on June 30, 1966.

Defendant's fourteen year old son, Barry, was operating his father's farm tractor in a southerly direction on the highway, towing a farm trailer. Young Spivey was engaged in hauling tobacco from the field to his father's barn, which were only a short distance apart, but a portion of the trip back and forth required use of the highway. At the time of the accident he was returning to the field after having carried and unloaded one load of tobacco at the barn.

Plaintiff's vehicle was also traveling in a southerly direction, having left Durham, N. C. at approximately 2:00 a. m. headed for Charleston, S. C.

Plaintiff's driver testified that slightly north of the accident there was an "S" curve; that just as he came out of the curve he saw defendant's farm tractor some distance ahead of him; that he was driving the tractor-trailer, which was loaded and weighed approximately twenty-eight tons, about fifty miles per hour. He further stated that on seeing the farm tractor he took his foot off the gas and decelerated to give the tractor time to get out of the no passing zone; that as soon as plaintiff's driver cleared the no passing zone, he sounded his air horn and turned the tractor-trailer into the left hand or passing lane and stepped on the gas; that when he was alongside the farm tractor and trailer, defendant's son threw out his hand and started to turn left, whereupon plaintiff's driver took his foot off the gas and hit his brakes. His tractor-trailer ran off the left hand side of the highway into the set back. Plaintiff's driver denied seeing any other vehicles in the vicinity.

Defendant's son testified that as he was towing the tobacco trailer behind his father's tractor approaching a farm lane into which he proposed to make a left turn from the highway, he gave a signal of his intention to turn left, but saw a pickup truck approaching from the south and decided he could not make the turn in time. About the same time he became aware that plaintiff's vehicle was approaching him from the rear, and realized it was not going to stop, but was attempting to pass him. He thereupon turned his tractor to his right and the truck struck the left rear wheel of the farm tractor, spinning it around and throwing him to the pavement. He got up to find his tractor still in the highway with the motor running and he cut it off. He denied that the farm tractor and trailer which he was driving at any time crossed the center line of the highway. He further testified that he did not hear any horn signal given by plaintiff's driver.

Harrison Ned, an elderly resident of a nearby community, testified that he was driving his pickup truck north on Highway No. 52 at the time of the accident approaching defendant's farm tractor, that he saw plaintiff's vehicle approaching at a fast rate, and saw defendant's son giving a left turn signal. He then saw plaintiff's vehicle whip out to come around defendant's tractor, and as it did, it struck the tractor. Ned testified he was only fifty yards up the highway and that the plaintiff's tractor-trailer would have hit him if it hadn't hit the defendant's tractor. It should be pointed out that plaintiff's driver, Heath, denies seeing Ned's pickup truck approaching. The court affords little weight to the testimony of this witness inasmuch as it is very doubtful that his truck could have been in the position he said it was at the time of the collision— about fifty yards south going at 55 m. p. h.—without his being involved in the collision; further, he failed to make his presence at the scene and fact that he was an eye witness to the collision known to anyone immediately after the accident, including plaintiff's driver who was looking for witnesses, the investigating highway patrolman, or defendant Spivey from whom he had bought insurance for many years and whom he

said he saw at the scene of the wreck. He did not tell Mr. Spivey that he was an eye witness to the accident until he saw him in Kingstree later on.

This court finds that plaintiff's driver was negligent in the operation of plaintiff's vehicle on the occasion in question in not applying his brakes and slowing down sufficiently to avoid the collision when he became aware of the farm tractor's presence. It is common knowledge that all farm tractors proceed at a relatively slow speed. He was knowingly faced with a potentially dangerous situation and due care demanded that he reduce the speed of his heavily loaded vehicle sufficiently to enable him to stop, slow down or turn in order to avoid the collision. As is so often the case the tractor-trailer driver merely lifted his foot from the accelerator to allow the tractor to leave the no passing zone, but did not slow down sufficiently because of the difficulty he would encounter in getting his tractor-trailer "rolling again". When a heavily loaded tractor-trailer slows down and loses its momentum it takes a considerable length of time to regain its speed, especially for passing.

This court is unable to determine whether plaintiff's driver at the last moment realized he was approaching the farm tractor too fast and hit his brakes veering off to the left, or whether when he saw Ned's pickup approaching he was going too fast to remain behind defendant's tractor. Whatever the cause he was negligent in going too fast for conditions and failing to have his vehicle under proper control, as required by the common law rules of the road and statute laws of the State of South Carolina.[1]

1. § 46–361. *General rule; maximum speed limits; where lower speeds required.*—(a) *General rule.*—No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

(b) *Maximum speed limits.*—Except when a special hazard exists that requires lower speed for compliance with paragraph (a) of this section, the limits specified in this section or established as hereinafter authorized shall be maximum lawful speeds, and no person shall drive a vehicle on a highway at a speed in excess of such maximum limits.

(1) Thirty miles per hour in any urban district.

(2) Seventy miles per hour on sections of the interstate system and other controlled access highways where official signs giving notice thereof are erected by the State Highway Department, but the nighttime speed on such sections shall not exceed sixty-five miles per hour.

(3) Sixty-five miles per hour on other sections of the interstate system and other controlled access highways where official signs giving notice thereof are erected by the State Highway Department, but the nighttime speed on such sections shall not exceed sixty miles per hour.

(4) Sixty miles per hour on other sections of State Highway primary routes where official signs giving notice thereof are erected by the State Highway Department, but the nighttime speed on such sections shall not exceed fifty-five miles per hour.

(5) Fifty-five miles per hour in other locations or on other sections.

"*Daytime*" means from a half hour before sunrise to a half hour after sunset.

"*Nighttime*" means at any other hour.

"*Urban district*" means the territory contiguous to and including any street which is built up with structures devoted to business, industry or dwelling houses situated at intervals of less than one hundred feet for a distance of a quarter of a mile or more.

The maximum speed limits set forth in this section may be altered as authorized in §§ 46–362 and 46–363.

(c) *When lower speeds required.*—The driver of every vehicle shall, consistent with the requirements of paragraph (a), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, approaching a hill crest, when traveling upon any narrow bridge, narrow or winding roadway, and when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions.

There is a conflict in the testimony as to whether the point of impact occurred in the north or south bound lane of traffic. Patrolman Bethea testified that when he arrived at the scene he found that the farm trailer was entirely in the north lane of traffic and that the tractor was across the center line headed east, the left rear wheel of the farm tractor was crushed; further that there was some debris three feet to the left of the center line in the northbound lane, and also some scuff marks to the left of center made when the two vehicles collided. The court concludes that the point of impact was in the northbound lane.

■ The court further concludes that young Spivey was negligent in not keeping a proper lookout and specifically in making his left turn when he knew or should have known that plaintiff's tractor-trailer was approaching from his rear and that he could not make a left turn with reasonable safety, in violation of the common law rules of the road and the statute laws of South Carolina.[2] Instead of making a 90° turn he was proceeding to "cut the corner" diagonally across to the farm road leading to his father's tobacco field. He had driven the tractor and trailer partially across the center line of the highway when he discovered that plaintiff's vehicle was about to pass him to his left; he then quickly attempted to turn back to his right, but this was too late to avoid the collision, and the right rear wheel of plaintiff's vehicle hit the left rear wheel of defendant's tractor.

This court finds that both plaintiff's driver Heath and young Spivey were each negligent in the operation of their vehicles which proximately caused and contributed to bringing about the collision and resulting damages.

## CONCLUSIONS OF LAW

In accordance with the foregoing findings of fact this court concludes as follows:

That it has jurisdiction of the parties and the subject matter in suit.

■ Under the law of South Carolina one who is guilty of negligence which contributes as a proximate cause to his own injury is barred from recovery of damages based upon the negligence of another party. Gladden v. Southern Ry. Co., 142 S.C. 492, 141 S.E. 90 (1928). In Sandifer v. Sale, 196 F.Supp. 721, 723 (E.D.S.C.1961), the court stated:

"The Supreme Court of South Carolina, has defined contributory negligence as ' "such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or cooperating with the negligent act of the defendant, to make it a proximate cause of the injury complained of." ' "

■ This court, having found both plaintiff and defendant, through their agents and employees acting within the scope of their employment, guilty of negligence which approximately caused the collision in question, concludes that plaintiff is barred from recovery by reason of his own contributory negligence. And, accordingly it is

Ordered that plaintiff's complaint be dismissed with costs.

Let judgment be entered accordingly.

2. § 46–405. *General rule for turning movements.*—No person shall turn a vehicle at an intersection unless the vehicle is, in proper position upon a roadway as required in §§ 46–402 and 46–403 or turn a vehicle to enter a private road or roadway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.

§ 46–406. *Signals required for turning or stopping.*—No person shall turn any vehicle without giving an appropriate signal in the manner herein provided in the event any other traffic may be affected by such movement. A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.