709 S.E.2d 607

**Neal BERBERICH, Appellant,**

v.

**Naomi M. JACK, Respondent.**

No. 26955.

Supreme Court of South Carolina.

Heard Dec. 2, 2010.

Decided April 4, 2011.

282

Edward L. Graham, of Graham Law Firm, of Florence, for Appellant.

Ronald P. Diegel and William H. Frye, both of Murphy & Grantland, of Columbia, for Respondent.

Justice BEATTY.

Neal Berberich brought this negligence action against Naomi M. Jack after he slipped and fell from a wet ladder while working at her home. Berberich alleged Jack engaged in reckless, willful, and wanton conduct that proximately caused his injuries because she refused to turn off a lawn sprinkler system while he was working. Berberich appeals from a jury verdict in favor of Jack, arguing, in a case of first impression, that the trial court abused its discretion in denying his request to charge the jury on the definitions of recklessness, willfulness, and wantonness and to instruct the jury that heightened forms of wrongdoing could not be compared to ordinary negligence under comparative negligence. Berberich alternatively asserts the jury should have been instructed that heightened degrees of wrongdoing are entitled to greater weight than ordinary negligence. He also asserts error in the denial of his new trial motion. We reverse and remand.

## I. FACTS

On July 1, 2002, Berberich entered into a contract with Jack to perform work on her home in Florence, South Carolina. During the course of the project, a controversy arose regarding Jack's use of an automatic sprinkler system, which came

on in various zones in the yard to water the lawn. According to Berberich, he told Jack that he and his crew were having difficulty working with the sprinklers on and asked that they be shut off. Jack refused and told him to "make the best of the situation and work around it." Jack became upset when Berberich turned the sprinklers off on several occasions and threatened to lock the controls if they were turned off again.

Jack maintained she never received a complaint about the system or a request to turn it off, and she never threatened to lock the controls. However, she stated when the system was turned off a second time, she instructed one of the crew members that her sprinkler system was not to be shut off again.

On August 9, 2002, Berberich was working alone on a punch list of items to finish the project when he observed the sprinklers come on in one area of the yard. Berberich noticed the controls had been locked so he could not turn the system off. Berberich moved to the front of the house, away from the sprinklers, to work on the windows. He then ascended an eight-foot ladder to reach the top of a tall bay window to clean some caulking. As he was working, the sprinklers came on in the zone where his ladder was located.

While coming back down the ladder, Berberich slipped on a wet rung and fell to the ground, injuring himself. Berberich told Jack he had fallen and asked her to call for an ambulance, but she ignored his request. As he walked away from Jack's home, Berberich collapsed in her driveway. Berberich used his cell phone to call for an ambulance, which arrived shortly after his call. Berberich received medical treatment for his injuries, which included a lumbar strain and contusion, abrasions on his back and his left shoulder, and a swollen right ankle.

Jack, in contrast, asserts Berberich came to her door to talk about the payment due. She denies Berberich told her he had fallen and that he had asked her to call an ambulance. She maintains Berberich did not fall at her house and that she is unaware an ambulance came to her home.

On April 29, 2004, Berberich brought this negligence action against Jack, alleging his injuries "were directly and proximately caused by the negligence, wil[l]fulness, wantonness and

recklessness of" Jack. Berberich sought recovery for medical expenses, lost wages, and other actual damages. He also sought an award of punitive damages.

At trial, Berberich contended Jack's actions in locking the controls and refusing to turn off the sprinklers constituted reckless, willful, and wanton conduct. He withdrew his request for punitive damages before the case was submitted to the jury, but he asked the trial court to charge the jury on the definitions of recklessness, willfulness, and wantonness and to instruct the jury that ordinary negligence is not a defense to a heightened degree of wrongdoing, so that his ordinary negligence could not be compared to Jack's allegedly reckless, willful, and wanton conduct. He also sought a verdict form with special interrogatories in accordance with these proposed charges. The trial court denied the requests, stating it believed the definitions Berberich sought were relevant only if punitive damages were at issue, and the charge requested by Berberich was not the law in South Carolina.

The trial court charged the jury on comparative negligence. The jury returned a verdict for the defense. The jury found Berberich was 75% negligent and Jack was 25% negligent in causing the accident, resulting in no recovery for Berberich. Berberich's motions for a judgment notwithstanding the verdict (JNOV) and a new trial (based on the allegedly erroneous jury charge and verdict form, as well as juror bias) were denied. Berberich appeals.

## II. STANDARD OF REVIEW

In an action at law, on appeal of a case tried by a jury, this Court may correct only errors of law. *Watson v. Ford Motor Co.*, 389 S.C. 434, 699 S.E.2d 169 (2010); *Townes Assocs. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976). The factual findings of the jury will not be disturbed unless no evidence reasonably supports the jury's findings. *Townes Assocs.*, 266 S.C. at 85, 221 S.E.2d at 775.

## III. LAW/ANALYSIS

### A. Comparative Negligence Charge

Berberich first argues the trial court abused its discretion in denying his request to charge the jury on the definitions of

recklessness, willfulness, and wantonness and to further instruct the jury that a plaintiff's ordinary negligence is not a defense to a defendant's conduct that is reckless, willful, and wanton. Berberich contends reckless, willful, and wanton conduct constitutes a heightened degree of wrongdoing that cannot properly be compared to ordinary negligence. In the alternative, Berberich argues the trial court abused its discretion in failing to instruct the jury that it should give more weight to conduct that is reckless, willful, and wanton. Berberich asserts this case presents a novel issue regarding tort law since the adoption of comparative negligence in this state.

■■■ "An appellate court will not reverse the trial court's decision regarding jury instructions unless the trial court committed an abuse of discretion." *Cole v. Raut*, 378 S.C. 398, 404, 663 S.E.2d 30, 33 (2008). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or is not supported by the evidence." *Id.*

■■■ An erroneous jury instruction will not result in reversal unless it causes prejudice to the appealing party. *Id.* at 405, 663 S.E.2d at 33; *see also Clark v. Cantrell*, 339 S.C. 369, 390, 529 S.E.2d 528, 539 (2000) ("When instructing the jury, the trial court is required to charge only principles of law that apply to the issues raised in the pleadings and developed by the evidence in support of those issues."). "A jury charge consisting of irrelevant and inapplicable principles may confuse the jury and constitutes reversible error where the jury's confusion affects the outcome of the trial." *Cole*, 378 S.C. at 404, 663 S.E.2d at 33.

### (1) Contributory Negligence versus Comparative Negligence

■■■ Prior to the adoption of comparative negligence in 1991, the doctrine of contributory negligence was the long-prevailing standard for tort recovery in South Carolina. "Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred." *Gladden v. S.*

*Ry. Co.*, 142 S.C. 492, 522–23, 141 S.E. 90, 99 (1928) (citation omitted).

Under contributory negligence, if a plaintiff was negligent to *any* extent in contributing to his own injury, the plaintiff was completely barred from recovering damages from a negligent defendant. *Gladden*, 142 S.C. at 523, 141 S.E. at 100; *S.C. Ins. Co. v. James C. Greene & Co.*, 290 S.C. 171, 348 S.E.2d 617 (Ct.App.1986).

To ameliorate the harsh results that could occur under this general rule, an exception developed that a defendant could not assert the contributory negligence of a plaintiff as a total defense in cases where the defendant's conduct was reckless, willful, or wanton; under such circumstances, the plaintiff's own contributory negligence would not bar the plaintiff's recovery. *Dawson v. S.C. Power Co.*, 220 S.C. 26, 66 S.E.2d 322 (1951); *Orangeburg Sausage Co. v. Cincinnati Ins. Co.*, 316 S.C. 331, 450 S.E.2d 66 (Ct.App.1994). However, if the plaintiff was also contributorily reckless, the plaintiff could not recover for the defendant's similarly reckless conduct. *Ardis v. Griffin*, 239 S.C. 529, 123 S.E.2d 876 (1962).

■ In 1991, South Carolina abolished the doctrine of contributory negligence and adopted comparative negligence as its tort standard in *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991). In *Nelson*, this Court stated that, under comparative negligence "a plaintiff in a negligence action may recover damages if his or her negligence is not greater than that of the defendant." *Id.* at 245, 399 S.E.2d at 784. "The amount of the plaintiff's recovery shall be reduced in proportion to the amount of his or her negligence." *Id.*

■ The Court adopted a modified version of comparative negligence known as the "less than or equal to" approach, by which the plaintiff in a negligence action could recover damages if his or her negligence is 50% or less or, stated another way, if the plaintiff's negligence does not exceed 50%. *Singleton v. Sherer*, 377 S.C. 185, 205, 659 S.E.2d 196, 206 (Ct.App.2008). "The determination of respective degrees of negligence attributable to the plaintiff and the defendant presents a question of fact for the jury, at least where conflicting inferences may be drawn." *Hurd v. Williamsburg County*, 363 S.C. 421, 429, 611 S.E.2d 488, 492 (2005).

## (2) Negligence versus Recklessness, Willfulness, and Wantonness

This Court has long noted the "troublesome question of the distinction to be made in the degrees of negligence." *Hicks v. McCandlish,* 221 S.C. 410, 414, 70 S.E.2d 629, 631 (1952). An examination of these distinctions will be helpful in considering Berberich's arguments.

"[N]egligence is the failure to use due care," i.e., "that degree of care which a person of ordinary prudence and reason would exercise under the same circumstances." *Hart v. Doe,* 261 S.C. 116, 122, 198 S.E.2d 526, 529 (1973). It is often referred to as either ordinary negligence or simple negligence.

"Recklessness implies the doing of a negligent act knowingly"; it is a "conscious failure to exercise due care." *Yaun v. Baldridge,* 243 S.C. 414, 419, 134 S.E.2d 248, 251 (1964) (citation omitted). If a person of ordinary reason and prudence would have been conscious of the probability of resulting injury, the law says the person is reckless or willful and wanton, all of which have the same meaning—the conscious failure to exercise due care. *Id.; see also Rogers v. Florence Printing Co.,* 233 S.C. 567, 577, 106 S.E.2d 258, 263 (1958) ("The test by which a tort is to be characterized as reckless, wil[l]ful or wanton is whether it has been committed in such a manner or under such circumstances that a person of ordinary reason or prudence would then have been conscious of it as an invasion of the plaintiff's rights."). The element distinguishing actionable negligence from willful tort is inadvertence. *Rogers,* 233 S.C. at 578, 106 S.E.2d at 264.

"It is well settled 'that negligence may be so gross as to amount to recklessness, and when it does, it ceases to be mere negligence and assumes very much the nature of willfulness.'" *Jeffers v. Hardeman,* 231 S.C. 578, 582–83, 99 S.E.2d 402, 404 (1957) (quoting *Hicks v. McCandlish,* 221 S.C. 410, 415, 70 S.E.2d 629, 631 (1952)).[1]

---

1. "Gross negligence is defined as 'the failure to exercise slight care.'" *Doe v. Greenville County Sch. Dist.,* 375 S.C. 63, 71, 651 S.E.2d 305, 309 (2007) (quoting *Steinke v. South Carolina Dep't of Labor, Licensing & Reg.,* 336 S.C. 373, 395, 520 S.E.2d 142, 153 (1999)). "It has also

 "[T]he terms 'willful' and 'wanton' when pled in a negligence case are synonymous with 'reckless,' and import a greater degree of culpability than mere negligence." *Marcum v. Bowden*, 372 S.C. 452, 458 n. 5, 643 S.E.2d 85, 88 n. 5 (2007). "Evidence that the defendant's conduct breached this higher standard entitles the plaintiff to a charge on punitive damages." *Id.*

 Punitive damages are appropriate where there is evidence the tortfeasor's conduct was reckless, willful, or wanton. *Cartee v. Lesley*, 290 S.C. 333, 350 S.E.2d 388 (1986). "Ordinarily, the test is whether the tort has been committed in such a manner or under circumstances that a person of ordinary reason or prudence would have been conscious of it as an invasion of the plaintiff's rights." *Id.* at 337, 350 S.E.2d at 390.

### (3) South Carolina Historical Perspective and Other Authorities

Although there is no South Carolina case specifically addressing whether reckless, willful, and wanton conduct can be compared to ordinary or simple negligence after the adoption of comparative negligence in this state, there is a trio of cases from our appellate courts that are instructive in this regard.

In *Stockman v. Marlowe*, 271 S.C. 334, 247 S.E.2d 340 (1978), this Court considered whether reckless, willful, and wanton conduct could be compared to ordinary negligence in a case interpreting former section 15–1–300 of the South Carolina Code.[2] This statute created an exception applying comparative negligence in cases involving motor vehicle accidents,

---

been defined as 'the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do.' " *Id.* "Gross negligence 'is a relative term, and means the absence of care that is necessary under the circumstances.' " *Id.*

**2.** Section 15–1–300 then provided: "In any motor vehicle accident, contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such contributory negligence was equal to or less than the negligence which must be established in order to recover from the party against whom recovery is sought." S.C.Code Ann. § 15–1–300 (1976).

although contributory negligence was then still the general rule in tort cases. The appellant argued that, since the statute refers only to "negligence," conduct that was reckless, willful, and wanton could not be compared to ordinary negligence.

We rejected that contention, holding although recklessness, willfulness, and wantonness are technically distinct from ordinary negligence, they are so "inextricably connected and interwoven to the extent that 'negligence' in its broadest sense is often said to encompass conduct of the former variety." *Id.* at 338, 247 S.E.2d at 342. We observed that recklessness, willfulness, and wantonness "are extensions of the law of negligence" and that the term "negligence" necessarily embodies all of these "kindred concepts." *Id.* We found the legislative purpose of the "comparative negligence" scheme for automobile cases could not be achieved unless the broad spectrum of conduct was considered so that a jury could evaluate the overall culpability of each party and bar the plaintiff's recovery only if the plaintiff's "fault" is greater than that of the defendant. *Id.*

Section 15–1–300 was later declared unconstitutional in *Marley v. Kirby*, 271 S.C. 122, 245 S.E.2d 604 (1978) for violating equal protection since it applied comparative negligence only to individuals involved in automobile accidents. However, the discussion in *Stockman* regarding the broad spectrum of conduct that is embodied under "comparative negligence" and its reasoning regarding the function of comparative negligence is instructive now that comparative negligence is the general rule in tort cases.

In a later case arising after South Carolina's adoption of a general comparative negligence scheme, *Weaver v. Lentz,* 348 S.C. 672, 561 S.E.2d 360 (Ct.App.2002), the Court of Appeals found "no error" where the trial court reduced the plaintiff's award for actual damages in a wrongful death action based on the decedent's percentage of negligence, even though the plaintiff had been awarded punitive damages. *Id.* at 684, 561 S.E.2d at 366. The plaintiff argued the award of punitive damages necessarily meant the jury had found the defendant had acted recklessly; therefore, the decedent's ordinary negli-

gence should not have been compared to the defendant's recklessness under our system of comparative negligence. *Id.*

The Court of Appeals rejected the plaintiff's argument, holding the award for actual damages was properly reduced by 50% for the amount of the decedent's negligence. *Id.* at 684–85, 561 S.E.2d at 367. The court reasoned that the rule that the plaintiff's ordinary negligence could not be compared to a defendant's reckless conduct served "a valid purpose under the very different contributory negligence scheme; however, the validity of this rationale is undercut by the offset inherent in the comparative negligence framework." *Id.* at 684, 561 S.E.2d at 367. These comments must be viewed as dicta, however, because there was no objection to the jury charge at issue and, therefore, no issue was preserved in this regard.

In another case, *Clark v. Cantrell,* 339 S.C. 369, 529 S.E.2d 528 (2000), this Court considered whether punitive damages should be reduced based on a plaintiff's negligence. The Court held the award of punitive damages should not be proportionally reduced because to do so would nullify the punishment and deterrence goals underlying punitive damages. *Id.* at 379–80, 529 S.E.2d at 534. Reduction of the actual damages, however, was deemed appropriate. *Id.* at 381, 529 S.E.2d at 534. We observed that "the overwhelming majority of other jurisdictions considering this issue have concluded that an award of punitive damages is not reduced under comparative negligence." *Id.* at 380, 529 S.E.2d at 534.

Thus, in *Clark,* the plaintiff's ordinary negligence was compared to a defendant's reckless conduct in assessing actual damages. However, in *Clark* we noted: "The parties agree that *Nelson* [*Nelson v. Concrete Supply Co.,* 303 S.C. 243, 399 S.E.2d 783 (1991)] requires the reduction of [the] plaintiff's actual damages." *Id.* at 378, 529 S.E.2d at 533. Thus, we were not asked to specifically address the issue presented in the current appeal—whether a plaintiff's ordinary negligence may be compared to a defendant's recklessness under our comparative negligence scheme. However, we now expressly answer this question in the affirmative.

Since the ruling in *Nelson,* the trial courts of this state have, as a matter of course, permitted juries to compare the conduct

of the parties to determine each party's culpability and, where the defendant's conduct was found to be reckless, willful, or wanton, the plaintiff has been additionally deemed entitled to punitive damages for this heightened level of misconduct. *See, e.g., Fairchild v. South Carolina Dep't of Transp.*, 385 S.C. 344, 683 S.E.2d 818 (Ct.App.2009).

In the current appeal, Berberich argues a question arises whether South Carolina's version of comparative negligence is a comparative "negligence" doctrine or a comparative "fault" scheme and argues ordinary "negligence" and recklessness differ in kind and should not be compared. In contrast, Jack asserts Berberich expressly consented to the case going to the jury on actual damages alone. Consequently, there was no need to instruct the jury on legal terms relevant only to an award of punitive damages.

A review of cases from other jurisdictions, as well as South Carolina, indicates the terms "comparative negligence" and "comparative fault" are frequently used interchangeably, with no discernable difference in application. In one case a court made an interesting distinction in these terms based on which party was at "fault," but this did not fundamentally alter the general concepts as suggested by Berberich. *See Veazey v. Elmwood Plantation Assocs.*, 650 So.2d 712, 715 (La.1994) ("These provisions of the comparative fault law all share a common characteristic; '[they all] use the term 'fault' when referring to tortfeasor conduct and 'negligence' when referring to victim conduct.'" (alteration in original) (citation omitted)).

Prosser and Keeton have noted that the use of the terms "negligence" and "fault" can cause confusion. *See* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 65, at 453 (5th ed. 1984) ("It is perhaps unfortunate that contributory negligence is called negligence at all. 'Contributory fault' would be a more descriptive term. Negligence as it is commonly understood is conduct which creates an undue risk of harm to others. Contributory negligence is conduct which involves an undue risk of harm to the actor himself. Negligence requires a duty, an obligation of conduct to another person. Contributory negligence involves no duty, unless we are to so ingenious as to say that the plaintiff is under an obligation to protect the defendant against liability for the

consequences of the plaintiff's own negligence." (footnotes omitted)).

South Carolina's system is essentially a comparative fault system, but comparative negligence is the term most often used in this state, and we recognize the terms as equivalent. Further, although there is a divergence of opinion in courts that have considered the question, we hold the sounder reasoning supports the determination that comparative negligence encompasses the comparison of ordinary negligence with heightened forms of misconduct such as recklessness, willfulness, and wantonness. *See Annotation, Application of Comparative Negligence in Action Based on Gross Negligence, Recklessness, or the Like,* 10 A.L.R.4th 946 (1981 & Supp.2010); 57A Am.Jur.2d *Negligence* § 243 (2004) (stating reckless, willful, or wanton conduct "constitute merely a higher level of negligence" and, although the concepts are technically distinct, they "can be thought of as extensions of the law of negligence") (citing *Stockman v. Marlowe,* 271 S.C. 334, 247 S.E.2d 340 (1978)); *see also Rickner v. Haller,* 124 Ind.App. 369, 116 N.E.2d 525, 530 (1954) (stating " 'negligence' is generally, if loosely, used to describe numerous kinds of misconduct, including wil[l]fulness and wantonness" and observing "in common parlance, 'wil[l]ful and wanton misconduct' are considered a kind of 'negligence' and are so treated under the title of 'Negligence' in our most reputable texts" (citing *American Jurisprudence* and *Corpus Juris Secundum* )).

In a case that is the subject of the *American Law Reports* annotation cited above, the California Court of Appeal held the doctrine of comparative negligence should apply even when one party's conduct is willful and wanton:

[W]e conclude that no defensible reason exists for categorizing willful and wanton misconduct as a different kind of negligence not suitable for comparison with any other kind of negligence. The adoption of comparative negligence in *Li* [*Li v. Yellow Cab Co.,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975) ] rendered such a separate category unnecessary since contributory negligence on the part of a plaintiff was no longer a total bar to recovery for a tortious injury. We apply an old axiom, "when the need for a rule ceases the rule ceases."

*Sorensen v. Allred,* 112 Cal.App.3d 717, 169 Cal.Rptr. 441, 446 (1980).

In *Martel v. Montana Power Co.,* 231 Mont. 96, 752 P.2d 140 (1988), the Supreme Court of Montana overruled a prior decision that held willful and wanton conduct was distinguishable from "mere negligence" and that comparative negligence was not applicable when the defendant's conduct was willful and wanton. The court stated this distinction was based on "faulty" reasoning as it was applicable only under the prior rule that contributory negligence by the plaintiff constituted a total bar to tort recovery as the distinction served to ameliorate the harshness of the contributory negligence rule. *Id.* at 142–43. The court observed, "Fortunately, we now operate under a scheme of comparative negligence where there is no danger of a plaintiff's slight negligence barring all recovery against a willful and wanton or grossly negligent defendant." *Id.* at 143. Consequently, "[t]he rationale for the rule ... no longer exists" and "all forms of conduct amounting to negligence in any form ... are to be compared with any conduct that falls short of conduct intended to cause injury or damage." *Id.*

We agree that the former rule that a plaintiff's ordinary negligence is not a defense to reckless conduct was meant to ameliorate the harshness of the "all or nothing" result under contributory negligence. Since the abandonment of contributory negligence in this state and the adoption of comparative negligence, the need for this concept has been eliminated.

 We hold that, under our comparative negligence system, all forms of conduct amounting to negligence in any form, including, but not limited to, ordinary negligence, gross negligence, and reckless, willful, or wanton conduct, may be compared to and offset by any conduct that falls short of conduct intended to cause injury or damage.[3] By this method, each party's relative fault in causing the plaintiff's injury will be given due consideration. A trial court should instruct the jury

---

3. Conduct that is not comparable includes intentional torts, such as assault, battery, and false imprisonment, as well as any other conduct intended to cause injury or damage. *See, e.g., Longshore v. Saber Sec. Servs., Inc.,* 365 S.C. 554, 561, 619 S.E.2d 5 (Ct.App.2005) ("Assault and battery is generally classified as an intentional tort, as contrasted with a tort based in negligence.").

on the definitions of these various terms, in addition to ordinary negligence, when so requested by a party, even if punitive damages are not at issue.

In the case now before us, the trial court declined Berberich's request to define the concepts of ordinary negligence versus recklessness, willfulness, and wantonness, but did instruct the jury on assumption of the risk [4] and other concepts. We find this had the potential to confuse the jury and skew the apportionment of fault in a manner that favored the defendant. For this reason, we reverse and remand for a new trial.

We reject, however, Berberich's contention that the jury should have been instructed that any negligence on his part could not be a defense to reckless conduct. For the reasons outlined above, a jury may compare all forms of negligence as part of its assessment of fault. We likewise reject Berberich's alternative argument that the jury should have been instructed that heightened degrees of wrongdoing should be accorded greater weight than ordinary negligence.[5] The relative significance of each party's conduct and its overall contribution to the plaintiff's injury are accounted for in the offsets inherent in our comparative negligence system.

## B. New Trial Motion

Berberich contends the trial court erred in denying his new trial motion based on (1) the jury charge and verdict form and (2) his claim of juror bias. Due to our reversal and remand on other grounds, we need not address Berberich's remaining issues.

---

4. Assumption of the risk as a complete bar to recovery was effectively abolished by this Court in *Davenport v. Cotton Hope Plantation Horizontal Prop. Regime*, 333 S.C. 71, 508 S.E.2d 565 (1998), in which we held assumption of the risk had been largely subsumed by the adoption of comparative negligence. "Although assumption of the risk is no longer recognized as a complete defense in a negligence action, it remains a facet of comparative negligence which may be charged to the jury." *Howard v. South Carolina Dep't of Highways*, 343 S.C. 149, 156 n. 4, 538 S.E.2d 291, 294 n. 4 (Ct.App.2000).

5. To the extent Berberich further argues the trial court should have prepared a verdict form with special interrogatories in accordance with these requests, we find no error.

## IV. CONCLUSION

We conclude that, under South Carolina's comparative negligence system, all forms of conduct amounting to negligence in any form, including, but not limited to, ordinary negligence, gross negligence, and reckless, willful, or wanton conduct, may be compared to and offset by any conduct that falls short of conduct intended to cause injury or damage. A trial court should instruct the jury on the definitions of these various forms of negligence whenever requested by a party. Because the jury instructions in this case had the potential to confuse the jury, we reverse and remand for a new trial in accordance with this decision.

**REVERSED AND REMANDED.**

TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.