**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

Karrie Gurwood and Howard Gurwood, Respondents,

v.

GCA Services Group, Inc. and GCA Services Group of North Carolina, Inc., Petitioners.

Appellate Case No. 2023-000606

———————

**ON WRIT OF CERTIORARI TO THE COURT OF APPEALS**

———————

Appeal from Charleston County
Alex Kinlaw Jr., Circuit Court Judge

———————

Opinion No. 28267
Submitted September 17, 2024 – Filed March 12, 2025

———————

**AFFIRMED AS MODIFIED**

———————

Robert T. Lyles Jr., of Lyles & Associates, LLC, of Mount Pleasant, for Petitioners.

Karrie Gurwood and Howard Gurwood, pro se, of Charleston, Respondents.

———————

**JUSTICE FEW:** Karrie and Howard Gurwood filed this lawsuit against GCA Services Group, Inc., on Karrie's negligence claim and Howard's loss of consortium claim after Karrie slipped and fell on a floor recently waxed by a GCA employee at

Karrie's workplace. At trial, the trial court granted GCA's motion for a directed verdict as to punitive damages. The jury then found Karrie and GCA were each fifty percent at fault, reached a defense verdict on Howard's loss of consortium claim, and awarded Karrie the exact amount of her past medical expenses.

The Gurwoods appealed on six grounds, including their contention the trial court erred by granting GCA a directed verdict as to punitive damages. The court of appeals reversed the directed verdict on punitive damages, found its reversal on that issue to be "dispositive" of the appeal, and remanded for a new trial. *Gurwood v. GCA Servs. Grp.*, Op. No. 2022-UP-462 (S.C. Ct. App. filed Dec. 21, 2022). We affirm the court of appeals' reversal of the directed verdict. However, we modify the remand instructions because we hold that requiring GCA to face a retrial on all issues would be contrary to law. As we will explain in Section IV of the opinion, the other five grounds on which the Gurwoods appealed must be addressed. The nature of the eventual remand to the trial court will depend on how the court of appeals handles those issues. If the court of appeals finds no error as to all of the other five grounds, then subsection 15-32-520(A) of the South Carolina Code will come into play, which, again, we will explain in Section IV. We remand to the court of appeals.

## I.     Facts and Trial Testimony

An employee of GCA Services Group—which was contracted to provide janitorial services at Liberty Hill Academy in North Charleston—waxed the floors in the hallways of the Academy on Saturday and Sunday, August 4 and 5, 2012. It being a weekend, particularly one in the summer vacation, the Academy was closed. On Sunday, August 5, Karrie went to her office at the Academy, where she served as a program director for the Carolina Youth Development Center housed there. Before Karrie reached her office, she slipped on the freshly-waxed floor and fell. She was seriously injured as a result of her fall.

The Gurwoods presented evidence the GCA employee who waxed the floors—Bonnie Every—did not post any notice so that those entering the building that day would know the floors were slippery and dangerous. According to Karrie, she "didn't realize the tile area was slippery," and the floor "was like a sheet of ice." She testified she did not see "any cones or signs or placards or warnings . . . telling [her] not to enter the school or not to enter that area." She further testified she had not "been given any kind of verbal or written warning about the fact [GCA] would be waxing the [floors] that weekend," nor had she "heard any announcement ever about waxing in the whole year-and-a-half, almost two years, that [she] worked there."

Karrie's husband Howard testified Karrie called him when she fell and he rushed to the school to check on her. He testified that when he arrived at the school he did not "see any warnings or signs or cones or placards indicating that it was dangerous to enter or that [the floor] was going to be waxed."

Every testified the GCA employee training manual classifies freshly-waxed floors as a "work zone" that requires "warnings to be used to keep people from . . . slipping on wet floors." According to Every, she "always leaves the signs . . . until the wax is completely dry" and she "always told [the school] when [she] was waxing" and "she did not want to be blamed if anyone fell." This testimony demonstrates Every knew freshly-waxed floors are dangerous. She testified the GCA training manual lists the "specific safety equipment to use in the case of slippery floors," requiring "a minimum of two warnings" should be placed at each work zone. Every testified, however, GCA did not provide the Academy all of the signs and safety equipment listed in the "Types of Signage" section of the GCA manual. Specifically, GCA did not provide her "closed for cleaning" signs, safety barricades, plastic barrier chains, expandable safety fences, red flags, or yellow caution tape. According to Every, "wet floor" signs and orange cones were the only safety equipment GCA provided to the Academy.

Every testified she waxed the floors near Karrie's office on Sunday, August 5, and put up warning signs prior to Karrie's fall. However, the Gurwoods' trial counsel cross-examined Every with a GCA incident report that indicated Every made her own "wet wax" signs that day with printer paper and red magic marker—instead of using the "wet floor" signs and orange cones GCA provided—and taped two of those signs to the inside doors of the school. According to the report, the two sheets of paper were the only signs she put up. Every confirmed her homemade "wet wax" signs were not listed as "Types of Signage" in the GCA manual.

Every also testified that on Friday, August 3, she "went specifically to Ms. Gurwood and told her that [she] would be waxing the floors . . . that weekend." When Karrie was asked about this, she testified she had never spoken to Every except for "pleasantries," and they had nothing more than "just a hi and bye relationship." She did not recall speaking to Every the Friday before she fell, but she said Every "absolutely didn't" warn her about the waxing. Karrie testified she had "no way of knowing that . . . [the] floor had just been waxed" because she received "no notice or warning." Every actually testified at one point that no one—including Karrie—was in the building that Friday because the floors were already being waxed.

Karrie testified the impact from the fall caused pain in her back, hips, knees, legs, and feet—but the worst pain was in the lower side of her left leg. After multiple appointments with different doctors, Karrie was diagnosed with Complex Regional Pain Syndrome (CRPS). According to Karrie, CRPS feels like "the worst burning pain you can possibly imagine underneath your skin, like someone is lighting up a match." Karrie testified her symptoms from CRPS "really affected [her] self-esteem," caused her to feel "depress[ed]" and "suicidal," greatly impacted her social life, and left her unable to work.

## II.    Directed Verdict, Jury Verdict, and Appeal

At the conclusion of the Gurwoods' presentation of evidence, GCA moved for a directed verdict on punitive damages, arguing there was "no evidence . . . that would support a jury's finding of . . . reckless conduct." Instead, GCA argued, the evidence "establishes at least some level of care on the part of Mrs. Every and would preclude a finding of punitive damages in this case." GCA further argued "conduct that would justify the imposition of punitive damages has to be extreme. And there is just no evidence of that in this case."

The trial court granted GCA's motion, stating the reckless "conduct of the at-fault party must be proven by clear and convincing evidence" and—based upon the evidence presented—"punitive damages would not be appropriate." The trial court further explained, "based upon my analysis of all the case law over all the years . . . this case does not rise to the level that a charge on punitive damages would be warranted."

The jury found GCA was negligent, Karrie was fifty percent at fault, and Karrie suffered damages in the amount of $170,629.10—the exact cost of her past medical expenses. Apparently, the jury did not include in its actual damages award the other elements trial counsel asked for in his closing argument, including lost wages, pain and suffering, future medical expenses, and loss of enjoyment of life. The jury also found for GCA on Howard's loss of consortium claim. Because the jury found Karrie fifty percent at fault, the trial court reduced her award to $85,314.55.

On appeal, in addition to the punitive damages issue, the Gurwoods argued the trial court erred by: (1) denying their new trial motions; (2) allowing GCA's expert witness to testify despite her methods being unreliable; (3) excluding some of the Gurwoods' expert's testimony; (4) allowing GCA to introduce evidence of collateral

sources to impeach Karrie as to her damages; and (5) permitting GCA to argue Karrie's assumption of risk to the jury. The court of appeals determined its decision as to punitive damages was "dispositive" and declined to address the other issues. The court of appeals remanded the case to the circuit court "for a new trial." *Gurwood*, Op. No. 2022-UP-462, at 2. We granted GCA's petition for a writ of certiorari to review the decision of the court of appeals.

## III. Punitive Damages Analysis

The central issue before us is whether the evidence described above is sufficient to warrant the trial court submitting the issue of punitive damages to the jury. We begin our analysis of this difficult question with the familiar refrain, "The purposes of punitive damages are to punish the wrongdoer and deter the wrongdoer and others from engaging in similar reckless, willful, wanton, or malicious conduct in the future." *Clark v. Cantrell*, 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000). As we stated in *Clark*, "This Court has explained the important role that punitive damages play in the American system of justice generally, and in South Carolina in particular since at least 1784." 339 S.C. at 379, 529 S.E.2d at 533; *see Genay v. Norris*, 1 S.C.L. (1 Bay) 6, 7 (1784) (explaining the circumstances of "a very wanton outrage upon a stranger in the country . . . which wrought a very serious injury to the plaintiff, and such a one as entitled him to very exemplary damages"). In *Clark* and most of our decisions on punitive damages, we focused primarily on the "important role" of the jury as to punitive damages.

Today we are focused on the important role of the trial judge in the resolution of punitive damages claims. In *Hollis v. Stonington Development, LLC*, 394 S.C. 383, 714 S.E.2d 904 (Ct. App. 2011), our court of appeals repeated another familiar refrain, "When ruling on a directed verdict motion as to punitive damages, 'the circuit court must view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.'" 394 S.C. at 393-94, 714 S.E.2d at 909-10 (quoting *Mishoe v. QHG of Lake City, Inc.*, 366 S.C. 195, 200, 621 S.E.2d 363, 366 (Ct. App. 2005)). Still quoting *Mishoe*, the *Hollis* court continued, "The issue of punitive damages must be submitted to the jury if more than one reasonable inference can be drawn from the evidence as to whether the defendant's behavior was reckless, willful, or wanton." 394 S.C. at 394, 714 S.E.2d at 910 (quoting *Mishoe*, 366 S.C. at 201, 714 S.E.2d at 366). Under this longstanding rule, the trial court must determine whether the jury could reasonably conclude from the evidence presented that the defendant engaged in willful, wanton, or reckless conduct.

In 1988 and 2011, however, our General Assembly enacted statutes to create a framework for trial courts to follow in submitting punitive damage claims to a jury and for reviewing those awards post trial. Act No. 432, 1988 S.C. Acts 2891, 2896; Act No. 52, 2011 S.C. Acts 238, 240. Under the 1988 statute, "In any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convincing evidence." S.C. Code Ann. § 15-33-135 (2005). Similarly, under the 2011 statute, "Punitive damages may be awarded only if the plaintiff proves by clear and convincing evidence that his harm was the result of the defendant's wilful, wanton, or reckless conduct." S.C. Code Ann. § 15-32-520(D) (Supp. 2024).[1]

Trial courts, the court of appeals, and this Court have struggled over the years to determine whether and how this "clear and convincing" standard affects the analysis of a directed verdict motion. In *Wise v. Broadway*, 315 S.C. 273, 433 S.E.2d 857 (1993), for example, a majority of the Court held the mere violation of the unspecific statutory provision that a driver "shall not follow another vehicle more closely than is reasonable and prudent" was sufficient to warrant submission of the punitive damages claim to the jury because such a violation "would be negligence *per se*," and thus, "evidence of recklessness." 315 S.C. at 276 n.1, 276-77, 433 S.E.2d at 859 n.1, 859 (quoting S.C. Code Ann. § 56-5-1930(A) (Supp. 2024)). The majority did not mention the newly-enacted 1988 statute requiring clear and convincing proof, but stated, "It is always for the jury to determine whether a party has been reckless . . . ." 315 S.C. at 277, 433 S.E.2d at 859. However, then-Associate Justice Toal specifically challenged the majority over the 1988 statute, noting the accident occurred five months after the statute's effective date, 315 S.C. at 281, 433 S.E.2d at 862 (Toal, J., dissenting), and writing,

---

[1] The phrase "clear and convincing evidence" is commonly understood, and therefore the statutes requiring this level of proof need no elaboration. Nevertheless, clear and convincing evidence has been defined as the "degree of proof which will produce in the fact finder a firm belief as to the allegations sought to be established. Such measure of proof is intermediate, more than a mere preponderance but less than is required for proof beyond a reasonable doubt; it does not mean clear and unequivocal." *Satcher v. Satcher*, 351 S.C. 477, 483, 570 S.E.2d 535, 538 (Ct. App. 2002) (cleaned up) (quoting *Anonymous v. State Bd. of Med. Exam'rs*, 329 S.C. 371, 374 n.2, 496 S.E.2d 17, 18 n.2 (1998)).

Clear and convincing evidence is an elevated standard of proof, which lies between the lesser standard of "preponderance of the evidence," used in most civil cases, and the higher standard of "beyond a reasonable doubt," which is required in criminal cases. In my view, the mere violation of the statute, without more, is insufficient to prove punitive damages by clear and convincing evidence.

315 S.C. at 282, 433 S.E.2d at 862 (Toal, J., dissenting) (citation omitted).

In the years following *Wise*, our appellate courts have been unclear as to whether a trial court should incorporate the clear and convincing standard into its directed verdict analysis. *Compare, e.g.*, *Fairchild v. S.C. Dep't of Transp.*, 398 S.C. 90, 99, 727 S.E.2d 407, 411 (2012) (stating as to punitive damages, "It is not the duty of the trial court to weigh the testimony in ruling on a motion for a directed verdict"), *with Sea Island Food Grp., LLC v. Yaschik Dev. Co.*, 433 S.C. 278, 289, 857 S.E.2d 902, 907 (Ct. App. 2021) (finding the trial court "did not err in determining the jury's punitive damages award was supported by clear and convincing evidence"), *and Kennedy v. Richland Cnty. Sch. Dist. Two*, 428 S.C. 98, 122-23, 833 S.E.2d 414, 427 (Ct. App. 2019) (finding "the circuit court did not err in submitting the punitive damages issue to the jury because clear and convincing evidence existed at trial to permit the jury to find Appellants acted willfully, wantonly, or with reckless disregard").

In *Ralph v. McLaughlin*, 428 S.C. 320, 834 S.E.2d 213 (Ct. App. 2019), *rev'd*, 432 S.C. 640, 856 S.E.2d 154 (2021), however, the court of appeals appeared to specifically rule the clear and convincing evidence standard does not come into play until after the trial court makes the decision to submit punitive damages to the jury. The court stated, "Once the issue has been submitted to the jury, 'the plaintiff has the burden of proving [punitive] damages by clear and convincing evidence.'" 428 S.C. at 345, 834 S.E.2d at 226 (alteration in original) (quoting § 15-33-135). The court differentiated between the trial court's role of "determin[ing] whether there are any reasonable inferences from the evidence to support the conclusion that the defendant's behavior was reckless" and the jury's role of "determin[ing] whether recklessness was proven by clear and convincing evidence." *Id.* Applying its reasoning to the facts of that case, the court of appeals stated "the circuit court indicated it did not think the McLaughlins were acting recklessly or intentionally," which the court of appeals held "invaded the jury's province by improperly weighing the evidence." 428 S.C. at 349, 834 S.E.2d at 228-29.

We reversed the court of appeals in *Ralph*, finding "as a matter of law that Respondents were not entitled to punitive damages." *Ralph v. McLaughlin*, 432 S.C. 640, 651, 856 S.E.2d 154, 159 (2021). In doing so, we expressly incorporated the clear and convincing standard into our analysis of the sufficiency of the evidence on review of a directed verdict on punitive damages. We stated, "The suggestion that removing the drainage pipe under these circumstances established clear and convincing evidence of Petitioners' malicious intent to invade Respondents' rights was not merely speculation, but absurd." 432 S.C. at 651, 856 S.E.2d at 160.

*Ralph* was about whether the defendants' purposeful actions were "willful." *See* 432 S.C. at 643, 856 S.E.2d at 155 (explaining the plaintiffs' argument that the intentional removal of a drainage pipe on an abandoned drainage easement caused additional flooding). This case is about whether GCA or Every was "reckless."[2] Nevertheless,

---

[2] We have often stated the terms "reckless," "willful," and "wanton" are synonyms. *See, e.g.*, *Marcum v. Bowden*, 372 S.C. 452, 458 n.5, 643 S.E.2d 85, 88 n.5 (2007) ("[T]he terms 'willful' and 'wanton,' when pled in a negligence case, are synonymous with 'reckless,' and import a greater degree of culpability than mere negligence."); *Yaun v. Baldridge*, 243 S.C. 414, 419, 134 S.E.2d 248, 251 (1964) ("Recklessness implies the doing of a negligent act knowingly. When a man actually acts negligently and he realizes that he is acting negligently, the law says he is reckless or willful and wanton, whichever term you prefer, they all mean the same thing, that is, the conscious failure to exercise due care." (quoting *State v. Rachels*, 218 S.C. 1, 8, 61 S.E.2d 249, 252 (1950))). In most of the cases in which we said the terms were synonymous—*Marcum*, *Yaun*, and *Rachels* for example—the operative conduct was negligence in driving an automobile. As *Ralph* demonstrates, however, the terms are not synonymous in all situations. In fact, Black's Law Dictionary provides different definitions for each term. "Wanton differs from reckless both as to the actual state of mind and as to the degree of culpability. One who is acting recklessly is fully aware of the unreasonable risk he is creating, but may be trying and hoping to avoid any harm. One acting wantonly may be creating no greater risk of harm, but he is not trying to avoid it and is indifferent to whether harm results or not. . . . Wanton conduct is reckless plus, so to speak." *Wanton*, BLACK'S LAW DICTIONARY (11th ed. 2019) (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 879-80 (3rd ed. 1982)). The term "willful" is clearly different from the other two terms as it implies a purposeful or malicious effort to bring about a particular result rather than simply a knowing violation of duty. *See generally State v. Garrard*, 390 S.C. 146, 149-51, 700 S.E.2d 269, 271-72 (Ct. App. 2010) (collecting cases defining the

the trial court in this case appears to have recognized that it must incorporate the clear and convincing evidence standard into its analysis of the defendant's directed verdict motion as to punitive damages. On this point, the trial court did not err.[3]

We disagree, however—as the court of appeals did—with the trial court's conclusion from that analysis. We find the evidence presented here could reasonably support a jury verdict that the Gurwoods proved by clear and convincing evidence Every or GCA was reckless. Every's testimony clearly indicates she knew the floors would be dangerous to anyone entering the building. She also testified she knew not only that it was important to place approved signs and placards to warn of slick floors, but also that she was required to do so by GCA. If the jury believed Karrie's and Howard's testimony there were no signs or placards when Karrie fell, then Every clearly knowingly violated the instructions GCA provided to her in the training

---

term "willful" and explaining a person's actions meet the definition when he "voluntarily and intentionally" commits and act with "a consciousness of wrongdoing"); *Willful*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Thus, while the terms are similar, they are not synonymous. In most automobile accident cases—and other negligence cases like this one—there is no reason for attorneys and courts to use the terms "willful" or "wanton." In other cases—like *Ralph*—there is no reason to use the term "reckless." Using the correct term in its proper context simplifies legal analysis for courts and factual analysis for juries.

[3] Our holding on this point is not inconsistent with our pre-*Wise* decision in *Sub Station II of Tennessee, Inc. v. Oliver*, 307 S.C. 166, 414 S.E.2d 141 (1992). In that case, the defendant counterclaimed on the theory of fraud, which also requires proof by clear and convincing evidence. *See First State Sav. & Loan v. Phelps*, 299 S.C. 441, 447, 385 S.E.2d 821, 824 (1989) ("Fraud must be proven by clear, cogent and convincing evidence."). At the close of evidence in *Oliver*, "the trial judge directed a verdict on the counterclaim on the ground that the evidence of fraud was not clear, cogent, and convincing." 307 S.C. at 168, 414 S.E.2d at 142. We reversed, holding "the issue of whether the evidence of fraud was clear, cogent, and convincing was a question for the jury." *Id.* As we read *Oliver* now, we agree the trial court does not decide whether the evidence is clear and convincing, but only whether the jury could reasonably find that it is. As the *Oliver* Court stated, "In considering the motion for directed verdict, the trial judge should have considered only whether the evidence was susceptible to more than one reasonable inference." *Id.*

manual, thereby creating a condition she knew was dangerous to someone like Karrie.

In addition, if the jury believed Every's testimony that GCA did not provide the signs and placards its own training manual required to be used, then GCA clearly violated its own standards for safety in cleaning floors. Even if the jury believed Every that she put up handmade signs because she did not have the required signs available, she still knowingly violated the requirements of the training manual after GCA did not comply with its own standards. The evidence on these points—if the jury believed the witnesses—is clear. In fact, no witness testified that Every complied with the training manual or that GCA provided the signs and placards the training manual required. Under these circumstances, the jury could reasonably have concluded the Gurwoods proved by clear and convincing evidence that Every and GCA acted with the consciousness of wrongdoing necessary to amount to recklessness. *See Berberich v. Jack*, 392 S.C. 278, 287, 709 S.E.2d 607, 612 (2011) ("'Recklessness implies the doing of a negligent act knowingly'; it is a 'conscious failure to exercise due care.'" (quoting *Yaun*, 243 S.C. at 419, 134 S.E.2d at 251)).

Thus, the trial court erred by granting GCA's motion for a directed verdict on punitive damages because a jury could reasonably have found by clear and convincing evidence that Every and GCA acted recklessly.

## IV. Remand

In its petition for rehearing to the court of appeals, GCA argued the court of appeals should not remand for a new trial on all issues because the court made no finding of any error that would warrant not honoring the jury's verdict on Karrie's fault, Howard's loss of consortium claim, or the amount of damages Karrie sustained. We recognize the court of appeals was following our precedent—certainly *Wise* and perhaps *Fairchild* as examples—in ordering a new trial on all issues. We now hold, however, the Gurwoods are not entitled to a new trial on all issues unless the trial court made some error that required reversal of the liability and actual damages verdict. As we have stated in related contexts, "A jury verdict should be upheld when it is possible to do so and carry into effect the jury's clear intention." *Vinson v. Jackson*, 327 S.C. 290, 293, 491 S.E.2d 249, 250 (1997) (quoting *Johnson v. Parker*, 279 S.C. 132, 135, 303 S.E.2d 95, 97 (1983)); *see also Lorick & Lowrance, Inc. v. Julius H. Walker & Co.*, 153 S.C. 309, 320, 150 S.E. 789, 793 (1929) (same).

For clarity, we set forth the result of our remand analysis before we explain our reasoning. An appellate court's ruling reversing a directed verdict for a defendant on a punitive damages claim does not automatically require a new trial on all issues. Rather, the appellate court must first resolve any remaining issues on appeal. If the appellate court reverses the liability and actual damages verdict on some other issue, then the court should remand for a new trial on all issues.[4] Otherwise, the court should remand the case for a new trial on punitive damages only. At that point, subsection 15-32-520(A) of the South Carolina Code (Supp. 2024) comes into play. If the defendant exercises the choice that subsection provides and elects to have actual and punitive damages tried before the same jury, then the trial court must conduct a new trial on all issues, including liability and actual damages. If the defendant chooses to retain the judgment previously entered on the jury's liability and actual damages verdict, however, then the trial court will conduct a new trial only on the punitive damages claim. While we recognize a new trial only on punitive damages will be an awkward undertaking, we are confident our circuit courts are capable of handling the difficulty.[5]

---

[4] As our discussion below of *Berberich* and *Wise* will demonstrate, this issue will not arise on appeal from a verdict for the defendant. In that instance, unless the appellate court finds some error requiring reversal of the defense verdict on liability and actual damages, the judgment entered on that verdict is final and any error in failing to charge the jury as to punitive damages is moot.

[5] Numerous other appellate courts have remanded cases for new jury trials only on the issue of punitive damages. *See, e.g.*, *McClure v. Walgreen Co.*, 613 N.W.2d 225, 237 (Iowa 2000) ("[W]e reverse and remand for a new trial on the issue of punitive damages only."); *Flores v. Baca*, 871 P.2d 962, 970 (N.M. 1994) (stating the appellant is "entitled to a trial on the issue of punitive damages. However, [the appellant's] compensatory damages are [final]"); *Morris v. Boerste*, 641 S.W.3d 688, 700 (Ky. Ct. App. 2022) ("[W]e . . . reverse the judgment as to punitive damages, and remand the case for a limited retrial on the issue of punitive damages."); *Sanchez v. Wiley*, 946 P.2d 650, 657 (N.M. Ct. App. 1997) ("We reverse the trial court's decision to grant a directed verdict and remand to the trial court for trial of the punitive damages claim."); *Nugent v. Kerr*, 543 N.W.2d 688, 692 (Minn. Ct. App. 1996) ("We therefore reverse the directed verdict and remand for a new trial on punitive damages.").

To begin the explanation of our reasoning, we turn to *Berberich v. Jack*, 392 S.C. 278, 709 S.E.2d 607 (2011). Prior to that case, an appellate ruling that a trial court erred in not charging the jury as to recklessness or punitive damages—if contributory or comparative negligence was an issue before the jury—always required a new trial on all issues. This is because, as we recalled in *Berberich*, "Under contributory negligence, if a plaintiff was negligent to *any* extent in contributing to his own injury, the plaintiff was completely barred from recovering damages from a negligent defendant." 392 S.C. at 286, 709 S.E.2d at 611. We then explained, "To ameliorate the harsh results that could occur under [the law of contributory negligence], an exception developed that a defendant could not assert the contributory negligence of a plaintiff as a total defense in cases where the defendant's conduct was reckless . . . ." *Id.* Thus, when we stated in *Wise,* "the case is remanded for a new trial," 315 S.C. at 277, 433 S.E.2d at 859, we did so because the pre-*Berberich* distinction between negligence and recklessness for purposes of contributory negligence and later comparative fault always required a new trial on all issues.[6] After *Berberich*, however, that distinction no longer exists. 392 S.C. at 293, 709 S.E.2d at 615-16. Rather, "under our comparative negligence system, all forms of conduct amounting to negligence in any form, including, but not limited to, ordinary negligence . . . and reckless . . . conduct, may be compared to" the defendant's non-willful conduct for purposes of comparative fault. 392 S.C. at 293, 709 S.E.2d at 615. After *Berberich*, therefore, it is no longer necessary to remand for a new trial on all issues simply because the trial court erred in not charging the jury on recklessness or directing a verdict on punitive damages.

In the absence of the pre-*Berberich* requirement just discussed, and in the absence of any finding of error warranting reversal of the jury's verdict on liability or actual damages, we hold the liability and actual damages verdict should be considered final—pending application of subsection 15-32-520(A), which we will discuss

---

[6] *Wise* was an appeal from a general defense verdict, so it was not possible to know for sure whether the jury found the plaintiff contributorily negligent or simply found the defendant was not negligent. The majority noted, however, "The jury's inability to consider the issue of reckless . . . conduct on the part of [the defendant] effectively eliminated [the plaintiff]'s defense to [the defendant]'s claim that he had been contributorily negligent." 315 S.C. at 276 n.2, 433 S.E.2d at 859 n.2 (citing *Wilson v. Duke Power Co.*, 273 S.C. 610, 616, 258 S.E.2d 101, 104 (1979) for the proposition "contributory negligence not available as a defense when defendant was reckless").

below. This derives in part from our discussion above of *Vinson*, *Johnson*, and *Lorick & Lowrance*, in which this Court stated, "A jury verdict should be upheld when it is possible to do so and carry into effect the jury's clear intention." This also derives from section 15-33-125 of the South Carolina Code (2005), which provides,

> A new trial may be granted to the plaintiff on the issue of damages only and not liability when the only reasonable inference to be drawn from all the evidence . . . is that the plaintiff is entitled to a verdict in his favor on the issue of liability as a matter of law. Unless the plaintiff is entitled to a directed verdict on the issue of liability, any new trial must include both issues of liability and damages.

Applying this section, both parties to this case are "entitled" to a judgment as a matter of law on the question of liability because—again, absent an error warranting reversal on that question—the jury verdict on that issue has become final. Thus, section 15-33-125 specifically permits—and arguably requires—a new trial only on punitive damages.

Finally, we turn to subsection 15-32-520(A), which provides, "All actions tried before a jury involving punitive damages, if requested by any defendant against whom punitive damages are sought, must be conducted in a bifurcated manner before the same jury." Initially, GCA has not requested that the same jury hear actual and punitive damages issues. In fact, as discussed above, GCA specifically asked the court of appeals not to remand this case for a new trial on all issues. Additionally, it is now impossible—five years after the original jury verdict—for the same jury that already determined actual damages to hear the remanded punitive damages claim. Nevertheless, subsection 15-32-520(A) grants the defendant the power to insist upon the same jury hearing actual and punitive damages. Here, because GCA essentially prevailed before the jury in the original trial, and considering GCA's request to the court of appeals that it not remand for a new trial on all issues, we seriously doubt GCA will invoke its subsection 15-32-520(A) right to "request[]" the trial of actual and punitive damages "before the same jury." If GCA does make that request, however, or if any defendant in a similar situation in the future does, then subsection 15-32-520(A) requires the request be granted. Because impaneling the same jury is now impossible, the only feasible way to grant that request as required by subsection 15-32-520(A) is to order a new trial on all issues. If GCA does not make the subsection 15-32-520(A) request, then the trial court should proceed to conduct a new trial only on the issue of punitive damages.

## V.    Conclusion

For the reasons explained above, we affirm the court of appeals' reversal of the trial court's ruling granting a directed verdict on punitive damages and remand to the court of appeals to resolve the remaining issues the Gurwoods raised on appeal.

**AFFIRMED  AS  MODIFIED.**

**KITTREDGE, C.J., JAMES and VERDIN, JJ., concur.  HILL, J., not participating.**